565 So.2d 1132 (1990)
Jimmy Lee NICHOLS
v.
Patricia S. MUNN.
No. 07-CA-58972.
Supreme Court of Mississippi.
July 11, 1990.
Laurel G. Weir, Thomas L. Booker, Weir & Booker, Philadelphia, for appellant.
J.R. Shannon, William B. Carter, Eppes Watts & Shannon, Meridian, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
On August 4, 1987, Jimmy Lee Nichols filed a complaint in the Circuit Court of Newton County, Mississippi against Patricia S. Munn alleging that on July 6, 1987, she had backed into the car he was driving into the parking lot of Hardee's cafe in Newton, Mississippi, and injuring him. Nichols sought damages in the amount of $75,000.00 actual and punitive.
Munn's Answer asserted the defense of contributory negligence. Both parties propounded interrogatories and gave depositions. Defense interrogatory number fifteen to Nichols asked about prior accidents. Nichols responded that he had been involved in two accidents prior to this accident.
On November 30, 1987, the trial resulted in a verdict for the defendant. The circuit judge imposed sanctions upon the plaintiff for maintaining a frivolous lawsuit, and for the false answer to interrogatory number fifteen.
We reverse because of improper judicial conduct during the trial, and reverse on the sanctions imposed for maintaining a frivolous *1133 lawsuit. We affirm the $500 sanction imposed for false answer to interrogatory number fifteen.

FACTS
At trial Nichols testified that while driving his sister's car, he executed a left turn from the north-bound lane of Highway 15 in Newton onto the entrance/exit drive of Hardee's (which is on the west side of said highway), when a black pickup truck driven by Munn backed into the left rear quarter-panel of the car he was driving. Munn was parked in front of Hardee's, on the left side of the entrance/exit drive. When the parties exited their vehicles, Munn stated that it was her fault. Nichols stated that he was not injured.
Nichols testified that he was in good physical condition until this accident, but had been plagued with neck and back pain since. Prior to the accident he hauled pulpwood with his truck. He stated that he hauled from zero to two loads a day, earning $50.00 per load.
On cross-examination, Nichols admitted that he and his brother owned the pulpwood truck and that he received $22.00 per load. He received this amount as rental on the truck, regardless of whether or not he went to the woods. He admitted that he did little work, other than to pull the cable from the truck to attach to logs, on the occasions that he did go to the woods. He did not recall the last time that he had filed an income tax statement.
Also on cross-examination, Nichols identified a photograph which exhibited a small dent in the left rear quarter panel of the car he was driving, and a photograph of Munn's truck showing no damage to the truck. No evidence of repair to Nichols' car was introduced at trial.
A photograph of the entrance to Hardee's from Highway 15 shows the entrance/exit (a two-way, two-lane entrance/exit) contained two arrows, one in the right, west-bound entrance lane, pointing west, and the other arrow in the left, east-bound exit lane, pointing east. Nichols stated that he was driving between the arrows when the accident occurred, which was in the middle of the entrance/exit.
Nichols was asked if he was in the wrong lane, to which he responded, "I feel I wasn't." He did not recall how far Munn had backed prior to the impact, or how far his vehicle was from the curb when he stopped.
Nichols admitted that his answer to defense interrogatory number 15 was that he had only had two previous automobile accidents, one in Philadelphia, on June 9, 1986, for which he was hospitalized from June 13 to June 17, and the other in Newton, on March 14, 1986, for which he was hospitalized from March 14, to March 21. He testified that he did not remember any other accidents.
When Nichols was cross-examined by defense counsel concerning previous accidents for which he was hospitalized (according to the hospital records), the following exchange occurred:
Q. [D]o you recall being in an automobile accident on October 6th, 1976, and you were hospitalized in the Newton Hospital for thirteen days, under the care of Dr. Billy Ray Shows, and he treated you for multiple contusions and back strain; and, at that time, you said you had severe back pain? Do you recall that?
A. No.
Q. You don't recall that. Fine. Do you recall being  you don't recall anything about that?
A. No.
Q. Okay. You're saying it didn't happen?
A. I'm not going to say it didn't happen.
Q. Okay. Let me see if I can refresh your memory. You don't remember anything about it now?
A. What did I hit, or what hit me?
Q. Okay. You don't remember?
A. No.
Q. That was in '76, about twelve years ago. Okay. Do you recall 
BY THE COURT: (Interposing)
Just a minute. I want him to take some time and answer that. I find it, *1134 quite frankly, incredible that you wouldn't remember that you had an accident. Let him have some time. I want him to answer that, one way or the other. [Emphasis added]

BY THE WITNESS:
A. Well, who did I hit, or what hit me?
BY MR. SHANNON:
Q. That's what I'm asking you. Do you remember being in an accident in '76?
A. I don't remember.
Q. I asked you for that information in the interrogatories and your deposition, and I didn't get it and we got it through the hospital records, which they say you were hospitalized for an automobile accident, complaining of back pain and strain.
A. I don't remember it.
Q. You still don't remember it?
A. No.
Nichols' hospital records showed that he had been involved in the following accidents:
(1) on October 6, 1976, for which he was hospitalized for thirteen days and treated for multiple contusions and back strain;
(2) on July 17, 1979, for which he was hospitalized;
(3) in 1985, while he was a passenger, and for which he was treated with ultrasound, physical therapy, and a cervical collar; and
(4) an accident in Quitman, Mississippi, but the date was not stated.
Furthermore, he admitted having been in an accident in August, 1987, subsequent to the accident in question.
Dr. Augustus P. Soriano, M.D., saw Nichols for the first time on July 7, 1987. Nichols was complaining of pain of the neck and lower back, caused by an auto accident. Dr. Soriano explained Nichols' condition as follows:
The only pertinent findings we had on Mr. Nichols was that he was complaining of pain in the neck. He had severe paraspinal spasm around his neck, with pain on range of motion of the neck. He did not have any marked pain on his lower back. In fact, most of the neurological examination we had of him was essentially normal.
Nichols was admitted to the hospital on July 8, where he remained until July 16, 1987, due to the injuries sustained in the July 6, 1987, accident. Dr. Soriano next saw Nichols on July 21, 1987, and again on July 24, 1987, due his continued pain. After a series of X-rays and tests, no specific injury to the spine was found. However, Dr. Soriano's final diagnosis was that "he had a cervical strain and lumbar sacral strain of the lower back and neck."
Dr. Soriano confirmed Nichols' doctor bills in the amount of $434.00, and hospital bills in the amount of $2,278.36.
Dr. Soriano prescribed muscle relaxers and pain medications for Nichols for the pain in his neck and back, and Nichols incurred a drug bill in the amount of $137.59.
When asked if Nichols' injury occurred recently, Dr. Soriano stated, "The physical findings we had is of recent nature. It could not have been an old injury."
On cross-examination, Dr. Soriano testified that Nichols had only informed him that he had been hospitalized due to a 1986 auto accident in Philadelphia, Mississippi. Nichols did not inform the doctor of the following previous accidents involving himself:
(1) an accident in 1964, for which he was hospitalized;
(2) an October 6, 1976, auto accident, for which he was hospitalized in Newton for thirteen days with multiple contusions and back strain;
(3) a July 17, 1979, auto accident, for which he was hospitalized for lower back strain and pain;
(4) an October 3, 1985, auto accident while a passenger, for which he was fitted with a cervical collar;
(5) a March 14, 1986, auto accident in Newton, Mississippi, for which he was hospitalized for a week with neck, back, and chest pain; or
(6) an August 26, 1987, auto accident in Union, which occurred after Nichols *1135 last visit to Dr. Soriano on July 24, 1987.
After cross-examination and redirect, the trial judge questioned Dr. Soriano, as follows:
BY THE COURT: (Examining the witness)
Q. Was it your opinion that this injury was recently caused, or did you ever formulate an opinion that these injuries, or the injury for which you first saw this patient were caused by the automobile accident of July 6, 1987? Do you have an opinion, based on reasonable medical probability, one way or the other?
A. Yes, Your Honor. The patient just doesn't develop cervical spasm, you know, from an old injury. It has to be recent.
Q. You were not aware of the other injuries and the other accidents at the time you first saw this individual?
A. No, sir.
Q. Was your opinion that it was recently caused, then, made without regard to that information?
A. Yes, Your Honor.
Q. Now, with these other injuries computed in, so to speak, to your opinion, does that change your opinion?
A. No, Your Honor.
Q. Are you saying that it was recently caused, or was caused by the accident of July 6th?
A. It was caused by the accident of July 6th, Your Honor, based on the findings I have on this man.
The defendant's motion for a directed verdict was denied.
Munn testified that she was parked in the parking space closest to the front of the building, the impact occurred while she was attempting to back from the parking space to enter the east-bound exit lane from Hardee's. She had not released the clutch, but had merely rolled backward in the parking space between two and three feet when she heard the noise. She said that her vehicle had not even entered the east-bound exit lane, but remained in the parking place.
Munn testified that although she did not see Nichols' vehicle until after the accident, he had to be traveling west in the left, east-bound exit lane, which was the wrong lane. She said that Nichols stopped his vehicle by the curb next to the Hardee's building.
Munn conceded that when the parties exited their vehicles, due to the excitement, she told Nichols that it was probably her fault. Munn asked Nichols several times during the twenty-minute period in which they waited for the police, was he hurt, to which he responded "no" on each occasion. Munn testified that upon reflection, since the accident, she definitely knew that the accident was not her fault.
On cross-examination, Munn admitted that she had stated to Nichols and officer Leon Reed that the accident was her fault and that she would see that his vehicle was repaired. However, at trial, she stated that Nichols had hit her.
James Harold Johnson, age 24 of Newton, Mississippi, testified that he witnessed the accident while pumping gas at the Super Stop approximately 100 yards north of Hardee's. He estimated that Nichols was traveling approximately thirty miles per hour when he turned into the parking lot at Hardee's. He stated that Nichols had "swung wide" and was traveling west in the left, east-bound exit lane. He stated the Munn's truck had moved backward approximately two to three feet.
When Johnson arrived at the accident scene, he asked Nichols was he injured and Nichols responded that he was not. Nichols' car had come to rest "probably two foot [sic] from the curb" on the north side of the Hardee's building.
On recross-examination, after being asked by defense counsel and the court did Nichols remain in the wrong lane from the time he entered until the impact, Johnson responded in the affirmative. On redirect, Johnson stated that his reason for watching Nichols vehicle before and during the accident was because "Mr. Nichols had *1136 about run over me to get to the gas pumps."
Leon Reed of the Newton Police Department testified that when he arrived at the accident scene to make out the accident report, Nichols' vehicle was parked in the east-bound exit lane, while Munn's truck remained in the parking slot. Munn's truck appeared to have moved approximately two to three feet.
Although the plaintiff's attorney made every objection imaginable during the trial, Reed concluded, without objection, that Nichols was traveling in the wrong lane at the time of the accident. On cross-examination, Reed admitted that Munn had "probably" told him that she had backed into Nichols.
The jury returned a verdict in favor of the defendant, which the court determined upon polling to be unanimous. In the presence of the jury, the trial judge began to admonish the plaintiff, to the point of accusing him of perjury. A copy of the admonition is attached as an appendix.
On December 2, 1987, a Judgment was entered in favor of the defendant, Munn, and all costs were taxed to the plaintiff, Nichols. The court entered an Order which continued the matter for final adjudication on December 9, 1987.
After the hearing on December 9, 1987, an Order was filed, which provided for sanctions against Nichols. Nichols was ordered to pay:
(1) sanctions under Rule 11(b) M.R.C.P. in the amount of $100.00 for maintaining a frivolous lawsuit;
(2) sanctions under Rule 37(b) in the amount of $500.00 for "failure to properly comply with the rules of discovery"; and
(3) "reimbursement of expenses and attorney's fees in the amount of $828.65 to the Defendant's attorney."
Nichols appealed, citing as error:
I. It is reversable [sic] error for the honorable trial judge to comment upon the weight of the evidence.
II. The decision is contrary to the overwhelming weight of the law and evidence and not supported by law or evidence.
III. The honorable lower court erred in imposing sanctions upon appellant after he failed to win his case, it being tried by an all white jury and appellant being of the black race, and there being no request for sanctions.
IV. The court erred in overruling objections to instructions of appellee and sustaining objections to instructions requested by appellant.

LAW

I. WERE THE TRIAL JUDGE'S COMMENTS PREJUDICIAL?

Summary of the Argument
Nichols did not object to any of these comments until he submitted his brief for appeal. Munn contends that this Court should not consider this assignment of error. Tippit v. Hunter, 205 So.2d 267, 271 (Miss. 1967). Munn's alternative contention is that should this Court consider the argument, then any error was harmless because there was no conflict in the evidence concerning the factual issues commented upon by the judge.
Nichols contends that no objection was necessary, since there was no indication whether an objection was made to comments by the judges in Young v. Anderson, 249 Miss. 539, 163 So.2d 253 (1964) and Sivley v. Sivley, 96 Miss. 137, 51 So. 457 (1910). Nichols admits that he failed to make a contemporaneous objection, but asks this Court to hold that the comments were plain error.
The attorney who voices his dissatisfaction over an improper question or erroneous instruction at trial for the first time in an appellate brief should spare himself any expectation and entertain at best a meager hope for any succor from this Court. Many lawsuits have been forfeited, and too many men find their fate the accommodations of the State penitentiary for such inattention of trial counsel. We have held in a host of cases that the failure to make a proper objection waives any claim of error *1137 on appeal, a few illustrative ones being: Moore v. Moore, 558 So.2d 834, 838 (Miss. 1990); Griffin v. State, 557 So.2d 542, 557 (Miss. 1990); Jackson v. State, 551 So.2d 132, 147 (Miss. 1989); Livingston v. State, 525 So.2d 1300, 1302 (Miss. 1988) (capital case); Tippitt v. Hunter, 205 So.2d 267, 271 (Miss. 1967); Jackson Yellow Cab Co. v. Alexander, 246 Miss. 268, 278, 148 So.2d 674, 678 (1963).
This is a necessary rule in spite of the hardship it undoubtedly causes. Without it trial counsel would have far less incentive to prepare himself for trial, and less inclined to be an alert, diligent advocate at trial. It is only that rare case where some exigency mandates reversal despite the dereliction of counsel. Griffin v. State, 557 So.2d 542, 552 (Miss. 1990) (prosecutorial comment on defendant's failure to testify); Mease v. State, 539 So.2d 1324, 1336 (Miss. 1989) (defendant not afforded a fundamentally fair trial); City of Jackson v. Copeland, 490 So.2d 834, 837 (Miss. 1986) (new trial granted where improper impeachment testimony elicited); Young v. Anderson, 249 Miss. 539, 545, 163 So.2d 253, 256 (1964) (prejudicial comment from bench precluded defendant from fair opportunity to present evidence on a contrary material point); Sivley v. Sivley, 96 Miss. 137, 51 So. 457 (1909) (trial judge's comment upon the evidence); Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902) (liability insurance mentioned).
The same rule applies to claims of misconduct on the part of the circuit judge. Counsel has the absolute duty, however painful, to voice his objection even to the circuit judge when he sincerely believes the court is evincing something less than impeccable impartiality. Woods v. Nichols, 416 So.2d 659, 662 (Miss. 1982) (en banc) (court held that judicial comment on the evidence was not prejudicial); Marsh v. Johnson, 209 So.2d 906, 908 (Miss. 1968) (judicial comments prejudicial, but were waived); Mississippi Power Co. v. Harrison, 247 Miss. 400, 419, 152 So.2d 892, 900-901 (1963) (prejudicial comment by judge was waived; reversed on other grounds); Dickinson v. Koenig, 242 Miss. 17, 27-28, 133 So.2d 721, 724-725 (1961) (prejudicial comment by judge waived).
There is, however, a difference between the two examples. A circuit judge may very well not detect an improper question, or consider trial counsel as a matter of strategy chooses not to object to the question or instruction. The circuit judge injecting himself into a trial, however, does so by his own deliberative intent, and he is at least supposed to know better. He should not need to be told by trial counsel that he has exceeded propriety or deviated from probity. We therefore need not hold trial counsel to precisely the same degree of diligence in the latter instance as in the former.
In this case the circuit judge was clearly wrong in the manner in which he injected himself into this lawsuit, both with Dr. Soriano as a witness, as well as the defendant. However well intentioned, or however exasperated the circuit judge may have been with what appears to be a lightheaded lawsuit, there was no necessity for his quite open display of incredulity before the jury both of the plaintiff's case and of the plaintiff himself. We must hold in this case that it was plain error, requiring reversal. Travelers Indemnity Co. v. Rawson, 222 So.2d 131, 136-137 (Miss. 1969); Young, supra; Sivley, supra.

SANCTIONS
As noted, the circuit judge imposed Rule 11(b) M.R.C.P. sanctions against Nichols for filing and pursuing a frivolous lawsuit, requiring him to pay $100 into court and $828.65 reimbursement to the defendant for attorney's fees. This was certainly a weak case, but hardly so devoid of any claim of liability as to be frivolous. Moreover, the circuit judge refused to grant the defendant a directed verdict at the close of plaintiff's case. Under these circumstances we hold the circuit judge erred in assessing Rule 11(b) sanctions for pursuing a frivolous lawsuit.
We find no error in the circuit judge assessing a $500 sanction against Nichols for his false answer to interrogatory number *1138 fifteen, which neither he nor his counsel ever attempted to correct. The sanction may have been more appropriately processed under Rule 37 M.R.C.P., but we see no reason a party or his attorney, or both, may not be monetarily sanctioned for either a deliberately or recklessly false answer to an interrogatory duly filed and propounded under our Rules. Nichols and his counsel should be relieved the court did not commit him to the custody of the sheriff to await the next action of the grand jury under Miss. Code Ann. § 99-3-29, following his trial testimony.
AFFIRMED AS TO IMPOSITION OF $500 SANCTION; REVERSED AS TO SANCTION IMPOSED FOR FRIVOLOUS LAWSUIT; REVERSED AND REMANDED AS TO IMPROPER JUDICIAL CONDUCT.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.

APPENDIX
After the jury returned its verdict, the court admonished the plaintiff as follows:
(JURY POLLED)
BY THE COURT:
Let the record show the verdict of the jury is unanimous. Now, I've tried not to show any leanings in this case, and I don't think I have, but I can't help but notice and take notice of some testimony we've heard here today, especially in light of past litigious conduct and similar events, as testified by the Plaintiff. I can't help but believe that testimony by the Plaintiff bordered on, if it did not hit the heart of, perjury. I find it incredible to believe that a person could not remember having spent thirteen days in a hospital as a result of an automobile accident, nor have the ability to remember several other automobile accidents. I find it incredible to believe that a person would testify under oath, after having signed Answers to Interrogatories under oath, and then say that that person has not read those answers. An oath is a very important and serious thing. When you sign it, you swear to the truth to the Court, to the jury, and to the parties. I have a great belief in this jury system, and, specifically, in regard to the tort system, itself. It is a system which works well, but it is a system which accords every person their day in Court. By virtue of assuring every citizen their day in Court, precluded from that is pre-trial censorship in any form. That is, every person has a right to a full and fair airing of their claim. But, when a person brings a case which is frivolous, that person hurts the next person who comes to Court asking for a fair and impartial hearing and a fair and impartial consideration of damages allegedly sustained at the hands of a civil wrongdoer. By virtue of bringing or countenancing the bringing of frivolous lawsuits, every Plaintiff becomes suspect in the future. That, sometimes, is an unavoidable part of a society which offers totally free access to Court. Our safeguard to that is the jury, and the common sense and intelligence of the jury, because the jury is fresh to determine all cases anew. So, rather than a Judge, as I might have been in this case, being biased by simply saying, "Well, this person has had this many cases of this nature before; and, therefore, I automatically don't believe him," and I see these cases all the time, we have a fresh jury who's made a determination of that fact. That's a fact. That matter has been concluded. So, that shows the great superiority of the jury system. Rule 11 of our Rules of Civil Procedure allows the Court to assess sanctions for the bringing of frivolous lawsuits. It allows the assessment of attorneys' fees, Court expenses and other matters. I realize that if there is an undue threat of such sanctions, a Plaintiff would be prejudiced from bringing "close cases of fact" for a fair determination. Lawyers may be chilled in their right to represent that Plaintiff; but, on the other hand, when it is clear that an abuse of the system is being perpetrated, actions should be considered. I am going to consider very *1139 seriously, Mr. Nichols, the question of sanctions levied against you. Rule 11 allows sanctions to be levied against the party. You are the party. That is the limit of my authority for filing or countenancing the filing of frivolous or unfounded claims. That matter will be taken under consideration, and I'll notify your attorneys when that may be finally determined. There will need to be no additional matter presented to me, but that will be the consideration of the Court. The verdict of the jury, of course, is accepted as the verdict of the Court, and you will submit a judgment within the next several days. I'll be back in Court here at least Wednesday, if you could have that here then.
BY MR. SHANNON:
Yes, sir.
BY THE COURT:
Ladies and gentlemen, as you know, what I've just said is not usual. It's not a thing that's pleasant. I said it with you here so that you would know. You've been judges in this case. You have a right to know that that is under consideration, and you have a right to know those things. This system works well when it is enforced properly, and everybody does their job. Sometimes it may be unpleasant, but we're going to make the system work properly so that the Plaintiff and every Defendant will have a full and fair day in Court; and, so that the next Plaintiff that walks into the Courtroom will have that right, and so that the next Defendant who walks into the Courtroom will have that right. I sincerely appreciate your very serious attention to all matters. I sincerely appreciate the fact that you've given up your time to make the determination that you've made in all the cases that you've considered. With the very sincere thanks of the Court, you're finally excused. Thank you.