955 So.2d 920 (2007)
Amy WALKER, Appellant
v.
Bobby GANN and Benchmade, Inc., a Mississippi Corporation, Appellees.
No. 2005-CA-01747-COA.
Court of Appeals of Mississippi.
May 1, 2007.
*922 James H. Walker, Cleveland, attorney for appellant.
B. Leon Johnson, and Wilton V. Byars, Elizabeth Ross Hadley, Oxford, attorneys for appellees.
Before KING, C.J., IRVING and GRIFFIS, JJ.
*923 IRVING, J., for the Court.
¶ 1. This appeal arises out of a personal injury claim filed by Amy Walker against Bobby Gann and Benchmade, Inc.[1] After all the evidence had been produced, the jury found that Gann was liable, and that Walker's damages totaled $14,000. The jury also found that Walker was forty percent at fault for the accident, and the court therefore reduced her final award to $8,400. Aggrieved, Walker appeals and asserts that the court erred in refusing to grant a jury instruction, in improperly commenting on evidence, in refusing to grant a motion in limine, and in refusing to grant Walker's motion for a new trial or an additur.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On January 29, 1997, Walker and Gann were both driving north on Highway Seven south of Coffeeville, Mississippi. The highway is a two-lane road, with one lane south-bound and one lane north-bound. Walker was behind Gann, who was driving behind a small truck that was also north-bound. Walker was in a Jeep Grand Cherokee and Gann was in a fourteen-wheel tractor trailer. The small truck in front of Gann apparently was proceeding at a rather slow pace. Therefore, when the opportunity arose, Gann attempted to pass the truck in front of him, and Walker attempted to pass Gann.
¶ 4. Walker testified that she had turned on her signal and pulled into the south-bound lane to pass Gann, and had proceeded part of the way alongside Gann's vehicle, when Gann came into the south-bound lane as well, hitting Walker's vehicle. Walker testified that the contact between the vehicles caused her to lose control and go off the right side of the road, where she collided with a stand of pine trees. Gann testified that he checked both his mirrors before moving to the left to pass the truck in front of him, but did not see Walker in his mirrors. Gann testified that, after he had started moving to the left, he saw Walker veer off the right side of the road behind his truck, at which point Gann stopped and went to render aid. Gann knew of no physical contact between his vehicle and Walker's.
¶ 5. At trial, the defense disputed whether there was any actual contact between Gann and Walker. Walker claimed that there was contact between the two vehicles, while Gann, James Hannah, a defense expert, the investigating officer at the scene of the accident, and Walker's own expert, Dennis Faust, all testified that they believed that there was no actual contact between the vehicles. Ashley Wilbourn, a passenger in Walker's vehicle, testified at trial that there was contact between the vehicles, although she had previously testified at her deposition that she did not recall any contact between the vehicles. Anthony Harbour, who witnessed the accident, testified that he did not see any contact between the vehicles.
¶ 6. Also contested at trial was whether Walker was following too closely to Gann. Evidence was introduced to indicate that the operator of a tractor-trailer truck like the one that Gann was driving has a "blind spot" immediately behind the back of the vehicle such that, if a vehicle is following too closely to the truck, the operator of the truck will not be able to see the vehicle. As a result of all the testimony presented, Hannah opined that the cause of the accident was Walker's failure to maintain a *924 safe distance and proper lookout, and, ultimately, Walker's failure to maintain control of her vehicle. Faust, Walker's expert, also admitted that Walker had a duty to maintain a proper lookout.
¶ 7. Several experts testified regarding Walker's alleged physical and mental injuries resulting from the accident. The defense produced its own experts to counteract the testimony of Walker's experts, and introduced evidence showing that Walker has suffered little to no permanent impairment as a result of the accident. The only undisputed injuries were the bruises and minor injuries that Walker was treated for immediately after the accident.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Jury Instruction
¶ 9. Walker contends that the court erred in refusing to grant her proposed jury instruction P-2. P-2 reads:
The Court instructs the jury that the Defendant, Bobby Gann, is guilty of negligence by failing to comply with his duty to keep a proper lookout, specifically his failure to ascertain the location of Plaintiff's vehicle prior to turning from the northbound lane of Mississippi Highway 7 to the left southbound lane or passing lane, attempting to pass another vehicle without ascertaining he could do so with reasonable safety, if you further find that the Defendant, Bobby Gann's failure to comply with this duty was a proximate contributing cause to the Plaintiff's injuries, then your verdict shall be for the Plaintiff, Amy Walker, against the Defendants.
(emphasis added).
¶ 10. As support for her argument that the instruction should have been allowed, Walker points to Gates v. Murphree, 286 So.2d 291 (Miss.1973), where the Mississippi Supreme Court affirmed a trial court's decision to give the jury an instruction telling it that the defendant was negligent as a matter of law. What Walker misses is that the defendant in Gates admitted that he had failed to maintain a proper lookout when he testified that he began to pass the vehicle in front of him on a curve in the road where it was not possible to maintain a proper lookout. Id. at 292. The court noted: "The general rule is that when a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him . . . he is conclusively bound by his own testimony, and cannot successfully complain if the court directs a verdict against him." Id. at 293.
¶ 11. In this case, the issue of whether Gann was negligent was contested. Gann's unequivocal testimony was that he had, in fact, maintained a proper lookout by checking his mirrors before attempting to pass the truck in front of him. Gann testified that he did not see Walker behind him when he looked in his mirrors. No evidence was offered to indicate that it was impossible for Gann to keep a proper lookout, as was shown of the stretch of road in Gates. Therefore, an instruction in this case that informed the jury that Gann was negligent as a matter of law would have been improper.
¶ 12. "While a party is entitled to have jury instructions submitted that represent his or her theory of the case, an instruction that `incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence' need not be submitted to the jury." *925 Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 380(¶ 16) (Miss.2004) (quoting Entergy Miss., Inc. v. Bolden, 854 So.2d 1051, 1054(¶ 6) (Miss.2003)). The proposed instruction was without foundation in the evidence, and the court did not err in refusing it. This issue is without merit.
2. Improper Comment on the Evidence
¶ 13. Here Walker claims that the court improperly commented on the evidence while giving its instructions to the jury. In instructing the jury, the court stated:
All of my instructions have a blue number at the top of the page and I'm going to read you instruction No. 24 next and I'm going to put it on top of the stack. Twenty-four tells you how to record a verdict if you, in fact, reach a verdict. Twenty-four is a two-page instruction and some of it's even in handwriting, some of it's typed, but I think the instruction will lead you where you want to go if you will follow it. It reads as follows: "When you reach a verdict in this case you should write it down on a separate piece of paper"  well, if you prefer to fill in the blanks, that will be acceptable on this case because it's a two-part instruction. "If you find for the plaintiff, you will say, we, the jury find for the plaintiff and assess her total damages as"  whatever money amount you may in your mind agree on. If you find for the defendants, all you've got to say is, "We, the jury, find for the defendants."
Going back, if you find for the plaintiff, you should write in the total damages you think she's sustained. Then it tells you, "If you find for the plaintiff and award damages, and if you find that both parties were at fault in causing this accident, refer to page two of these instructions."
Page two tells you: "Complete the following paragraph and the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in the percentage[s], [which] when added together it can't exceed 100 percent. If you assess a percentage of fault to any of those listed below, the total such percentage must be 100 percent."
All right. On the claim. If you find, "We the jury assess percentage of fault as follows"  if this is your finding, "If you find Amy Walker was guilty of negligence," and determine what percent you think she was, write it in. If you think Bobby Gann was guilty of negligence, write it in. Total up, which must equal 100 percent. And then I'll be required  if you come out and say it was 60-40 or something like that, to come back and lessen this amount here by the amount of fault that you attribute to the other party.
Now, this may sound real complicated but it's not. You would put your total damages, come back, tell me, we find that she was damaged this much but she was guilty of this much negligence, then I would have to reduce the amount of total damages by the amount of negligence you tell me that she was guilty of. It's not a difficult instruction; the lawyers will probably want to go into more detail with you on that instruction. That's the way we're required under existing law today to deal with these cases and most all cases now, or at least a lot of them. We make it as simple as we can, but it does sounds [sic] complicated when you're confronted for the first time.
(emphasis added). Walker claims that this statement to the jury constitutes reversible error because "the aforesaid jury instruction to the jury wrongfully instructed *926 the jury which was extremely prejudicial to the Plaintiff. . . ."
¶ 14. Mississippi Code Annotated section 11-7-155 (Rev.2004) states: "The judge in any civil cause shall not sum up or comment on the testimony, or charge the jury as to the weight of the evidence." Walker contends that the judge in this case violated this section. As proof, Walker points to the fact that the jury came to the same division of fault as the court gave in its example, that is sixty-forty.
¶ 15. We note first that the court informed both parties before instructing the jury that he would discuss further with the jury how to find its verdict: "I'm going to try to impress on them how to follow that instruction, but it's obviously proper areas for argument and explanation for the attorneys also." We further note that no objection was made by Walker when the judge gave the jury the sixty-forty percent example. The closing arguments of counsel are not included in the record before us, so this Court is without knowledge as to whether Walker or the defendants made further arguments to the jury about how to fill out its verdict.
¶ 16. Walker's claim on this issue is procedurally barred for failure to contemporaneously object to the court's comment. In Parker Tractor & Implement Co. v. Johnson, 819 So.2d 1234, 1242 (¶¶ 33-35) (Miss.2002), the Mississippi Supreme Court noted that an appellant had failed to preserve error for appeal where a judge made a brief comment which was not objected to until well after the remark had been made. In the present case, no objection was ever made to the court's comment. As the Parker court noted, "[c]ontemporaneousness is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance." Id. at 1241(¶ 33).
¶ 17. In response, Walker quotes Nichols v. Munn, 565 So.2d 1132, 1137 (Miss. 1990), where the Mississippi Supreme Court stated:
[t]he circuit judge injecting himself into a trial, however, does so by his own deliberative intent, and he is at least supposed to know better. He should not need to be told by trial counsel that he has exceeded propriety or deviated from probity. We therefore need not hold trial counsel to precisely the same degree of diligence in [that] instance. . . .
The court went on to note that the judge's comments in Nichols constituted "plain error, requiring reversal." Id.
¶ 18. Therefore, in the absence of a contemporaneous objection, the court's comment must rise to the level of plain error in order to require reversal. "`[I]n order to reverse under the plain error doctrine, the reviewing court must find both error and harm. . . .' Additionally, issues of plain error will only be addressed if the fundamental rights of a party have been violated." HWCC-Tunica, Inc. v. Jenkins, 907 So.2d 941, 944(¶ 7) (Miss.2005) (quoting Bolden, 854 So.2d at 1059(¶ 22), citing Johnson v. Gray, 859 So.2d 1006, 1015(¶ 43) (Miss.2003)). Therefore, the comment in this case must have violated one of Walker's fundamental rights. Taken in context, it is clear that the example given to the jury was simply to aid their understanding of what would happen when they rendered their verdict, and how the form of their verdict should look. We fail to see that the instruction violated any of Walker's fundamental rights. Therefore, the statement, at best, constitutes harmless error that is procedurally barred in the absence of a contemporaneous objection.
¶ 19. We would find this issue without merit even if a contemporaneous *927 objection had been lodged by Walker. In MIC Life Ins. Co. v. Hicks, 825 So.2d 616, 624-25(¶ 28) (Miss.2002), the Mississippi Supreme Court noted that a judge had improperly invaded the province of the jury with his remarks when he had "chastised the witness for . . . `equivocating.' He instructed the witness to `be candid.'" As the court noted, "instructing a witness to `be candid' is tantamount to informing the jury that the witness is being deceitful and evasive." Id. at 625(¶ 28). We note that the judge's comment in this case is far from the level of insertion of the judge in MIC. Nothing in the judge's explanation indicated anything about how the judge felt that the jury should rule, nor was the judge's comment "tantamount" to commenting on evidence that had been presented. Quite simply, Walker has failed to show that the comment prejudiced her case in any way or that the comment improperly affected the jury in any way. Therefore, this issue would be without merit even in the absence of the procedural bar.
3. Expert Witness
¶ 20. In her third assignment of error, Walker contends that the court erred in allowing the testimony of James Hannah, the defendants' expert accident reconstructionist. Specifically, Walker claims that the defendants committed a discovery violation in not giving the grounds for Hannah's opinions, and that Hannah's testimony was not based on reliable principles and should have been excluded. We address each of these contentions in turn.
(a) Discovery Violation
¶ 21. According to Rule 26 of the Mississippi Rules of Civil Procedure, a party's expert witness designation must "state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." M.R.C.P. 26(b)(4)(A)(i). The designation provided by the defendants for Hannah stated, in part:
Mr. Hannah is expected to be offered as an expert in the area of accident investigation and reconstruction. . . . In formulating his opinions, Mr. Hannah has reviewed the Mississippi Uniform Accident Report; photographs of the jeep involved in the accident (Walker vehicle); the depositions of Bobby Gann, Officer Weaver, Ashley Wilbourn, and Amy Walker; the witness statement of Anthony Harbor [sic]; witness statement of Ashley Wilbourn; medical records from Grenada Lake Medical Center; Complaint; Answer and Defenses; and the report of Dennis Faust dated October 28, 2004. In addition, Mr. Hannah has conducted an inspection of the accident scene and has supervised a survey of the accident scene. Mr. Hannah is expected to testify that the vehicle operated by Amy Walker was traveling northeast on Mississippi State Highway 7 approximately 5 miles south of Coffeeville. She was operating her vehicle behind an 18-wheeler driven by Bobby Gann. As the two vehicles neared Yalobusha County Road 71, Highway 7 had a double yellow line which designated a no-passing zone. As the vehicles continued north, they reached a point designated for safe passing by means of a broken yellow line. The distance between the start of [the] broken yellow line and the point of the rest of the jeep was 1,250 feet. . . . The posted speed limit for the area was 55 mph. At the time of the accident, the roadway was dry and the accident took place during the day. Both Bobby Gann and Amy Walker were traveling behind a slow moving vehicle. They each state that they began to attempt to pass the *928 slow moving vehicle. Within each driver's remembrance, oncoming traffic was clear. The maneuver to pass is a standard act, such as accelerating and braking. There was no evidence of contact between the vehicles. James Hannah concurs with Trooper Weaver that this was a one vehicle accident as set forth in the Mississippi Uniform Accident Report. Mr. Hannah also concurs with Officer Weaver that Amy Walker was following too closely behind the 18-wheeler operated by Bobby Gann prior to the accident. It is James Hannah's opinion that the sole cause of the accident was Amy Walker following too closely and failing to keep her vehicle under control by not braking and/or steering in such a manner to maintain control of her vehicle. Mr. Hannah reserves the right to supplement his opinion as additional information becomes available.
¶ 22. Despite the above designation, Walker first objected to Hannah's testimony on the ground that: "It's a discovery violation. I've never been given any opinions or summaries for grounds for his opinions in discovery." In response, the defendants pointed out that "we have answered discovery. I've got three pages worth of his opinions. I produced three diagrams, five photographs, and this was all done probably a year and a half or two years ago." Thereafter, the court reviewed the expert designation provided for Hannah and ruled: "I think the discovery request has been substantially complied with it [sic]. That should give opposing counsel a good overview of what's expected from this witness and I think that's what the point of discovery is. . . . It may not be perfect, but I think it's substantial compliance."
¶ 23. Hannah's specific testimony that Walker objects to regards the speed that Walker would have had to have been going to reach a certain point on Gann's truck at the time of the accident.[2] During Hannah's direct examination, he was asked, "were you in the courtroom . . . when Mr. Faust gave his opinions?" Hannah indicated that he was in the courtroom during Faust's testimony. Hannah was then questioned about Faust's testimony regarding speed, distance, and the time it would have taken Walker to reach a certain point on Gann's vehicle. Eventually, Walker's attorney objected: "None of these last half a dozen questions were put in the answers to interrogatories. His testimony is set out for me on a piece of paper I got here and none of this was in it." In response, the defendants' attorney pointed out that the testimony was elicited in response to Walker's own expert's testimony regarding speed, distance, and time. The court overruled Walker's objection, noting, "I think this witness is proper."
¶ 24. "[T]he admission of expert testimony is within the sound discretion of the trial judge." Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss. 2003) (citing Puckett v. State, 737 So.2d 322, 342(¶ 57) (Miss.1999) (overruled on other grounds)). We will not disturb the decision of a trial judge in this regard "unless we conclude that the [decision] was arbitrary and clearly erroneous, amounting to an abuse of discretion." Id. (quoting Puckett, 737 So.2d at 342(¶ 57)). We have *929 stated that "discovery responses regarding experts do not, indeed cannot include everything that an expert witness will state at trial." Peterson v. Ladner, 785 So.2d 290, 295(¶ 20) (Miss.Ct.App.2000).
¶ 25. The court did not clearly err in allowing Hannah to testify. We note that the designation clearly indicated that Hannah would testify that "the sole cause of the accident was Amy Walker's following too closely and failing to keep her vehicle under control by not braking and/or steering in such a manner to maintain control of her vehicle." It follows reasonably from this summary of Hannah's opinion that Hannah might testify about the speeds, distances, and times involved in the accident. Furthermore, the testimony objected to was clearly in response to opinions given by Faust, Walker's expert, during his testimony.
¶ 26. Walker also contends that the designation was insufficient to support Hannah's trial testimony because Hannah opined at trial that part of the cause of the accident was Walker's failure to maintain a proper lookout. However, some of Hannah's testimony dealing with the issue of whether Walker maintained a proper lookout was also elicited as a result of testimony by Faust and other witnesses as to what happened. Specifically, Hannah was asked, "If Mr. Faust said [that if Walker was near the cab of Gann's truck and did not see the vehicle in front of Gann, then Walker was not maintaining a proper lookout], do you agree with him?" Hannah responded in the affirmative. After stating on the stand that he found the cause of the accident to be "that the vehicle to the rear did not keep a proper lookout and failed to maintain control of the vehicle," Hannah went on to explain how a proper lookout and how following too closely are inextricably related. Hannah then testified that his expert designation had, in fact, included his opinion that the accident was caused by Walker following too closely to Gann. Given the wide latitude enjoyed by trial judges in determining the admissibility of expert testimony, the court did not clearly err in allowing Hannah's testimony.[3]
¶ 27. Walker cites several cases that she contends support her position. However, by and large, these cases provide no support whatsoever for Walker's contentions. For example, in Buskirk v. Elliott, 856 So.2d 255 (Miss.2003), the Mississippi Supreme Court affirmed a trial court's decision to allow an expert's testimony, even though the expert was improperly identified as a urologist in the expert witness designation. On appeal, the appellants claimed that allowing the testimony was error, and cited numerous ways that the misidentification had prejudiced their case. Id. at 262(¶ 18). The court rejected the reasons, noting "the substance of the interrogatory response . . . was sufficient to give [the appellants] adequate notice of his expertise, despite his misidentification as a urologist." Id. at 264(¶ 23). The Buskirk court found that admission of the expert's testimony was not error, even in light of a blatant discovery violation. By contrast, there was no blatant discovery violation in the present case.
*930 ¶ 28. Walker also cites Square D Co. v. Edwards, 419 So.2d 1327 (Miss.1982), where the Mississippi Supreme Court reversed a case because the information given in an expert witness designation was insufficient. The designation initially indicated that no opinion was known, but was later supplemented to refer to a deposition taken of the expert. Id. at 1327. At trial, the expert testified that there were three defects in the design of a switch. Id. However, this opinion was not given in the deposition referred to in the supplement. Id. at 1328. Therefore, the court held that the testimony should have been excluded because the subject matter of the expert's opinion was never given prior to trial. Id. at 1329. Such is clearly not the situation in the case before us, where the subject matter of Hannah's opinions was given to Walker several months before trial, in the form of the defendants' expert witness designation.
¶ 29. This contention of error is without merit.
(B) Reliability of Testimony
¶ 30. Walker also contends that Hannah's testimony lacked a reliable basis and should have been excluded. Specifically, Walker questions, "How in the world can the expert witness James Hannah of the Defendants make such an unfounded statement [that Walker was following too closely] not based upon sufficient facts or data, not supported by the facts, and no evidence whatsoever of same."
¶ 31. Rule 702 of the Mississippi Rules of Evidence allows expert testimony, where qualified and where the testimony will be of aid to the jury, as long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Mississippi utilizes a modified Daubert[4] standard to determine the admissibility of expert testimony: "First, the court must determine that the expert testimony is relevant [i.e., that the testimony will assist the trier of fact]. . . . Next, the trial court must determine whether the proffered testimony is reliable." McLemore, 863 So.2d at 38(¶ 16) (citations omitted). In determining whether the testimony is reliable, there is a non-exhaustive list of factors that the court should use. Id. at 36-37(¶ 13).
¶ 32. Here, Hannah stated that he was basing his testimony and opinions on multiple pieces of evidence, including the layout of the accident scene, Walker's testimony, Anthony Harbour's testimony, Gann's testimony, and the opinions and findings of the officer who investigated the scene. On the stand, Hannah explained how each of those pieces of evidence supported his finding that Walker was following too closely to Gann at the time of the accident. Walker makes much of the fact that Gann testified that he did not see Walker immediately before the accident, but according to Hannah and other evidence, this supports a finding that Walker was following too closely, and was therefore in Gann's blind spot. Hannah's testimony was based on sufficient facts and data.
¶ 33. Hannah also indicated that his findings were based on reliable principles and methods. Hannah testified regarding his extensive training and experience in investigating accidents and their causes. Hannah explained how scientific principles supported his findings. Therefore, his testimony meets the second prong of Rule 702. Nothing indicates that those principles *931 and methods were not applied reliably to the facts of the present case. Therefore, Hannah's testimony also meets the last prong of the Rule 702 test. The court here fulfilled its gatekeeping function in accordance with the modified Daubert standard, although there was no formal Daubert hearing.[5] First, Hannah's testimony was clearly relevant. Furthermore, there was ample evidence that Hannah's testimony was reliable. Therefore, the court did not err in finding that the testimony was admissible.
¶ 34. As support, Walker points out that Dennis Weaver, the officer who investigated the accident, found that Walker had the right of way and did not indicate that Walker was following too closely to Gann. Walker then contends that "[f]ollowing too close is something that comes into play when one motor vehicle is following another and runs into the rear." Walker essentially disputes the defendants' theory of the case. However, Walker presented her theory of the case at trial. The decision as to which of these theories is more compelling is one left to the jury. Nothing indicates that it was impossible for Walker's proximity to Gann's vehicle to be a contributing factor in this accident. Therefore, there was a basis for Hannah's testimony and finding that Walker's following too closely caused the accident in question. The question of the credibility of that finding is one properly left to the jury.
¶ 35. Walker contends that Hannah's testimony had to be based on guesswork or speculation. However, such is simply not the case. In fact, at one point the court sustained an objection and noted that Hannah's testimony appeared to have crossed into the realm of speculation. The defendants' attorney rephrased the question accordingly. Shortly thereafter, Walker objected to a different question, and the court asked Hannah, "can you intelligently answer that, Officer, or is that something that's just guessing?" Hannah responded, "No, it's not guessing, sir, it's based on the facts of what was available to the driver." Hannah repeatedly explained the basis for his opinions and findings. The record does not reflect that Hannah's testimony was the result of guesswork.
¶ 36. This contention is also without merit.
4. Additur/New Trial
¶ 37. In her final claim of error, Walker contends that the trial court erred in refusing to grant her motion for a new trial or, in the alternative, refusing to grant an additur to supplement the jury's finding of damages. Because the two issues are distinct, we separately address both the additur claim and the motion for a new trial.
Additur
¶ 38. The question of whether a jury award is excessive must be addressed on a case-by-case basis. Bolden, 854 So.2d at 1058(¶ 20) (Miss.2003). "We will not disturb a jury's award of damages unless its size, in comparison to the actual amount of damage, shocks the conscience." Id. (citing City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss.1983)). In reviewing a jury's award of damages, "after the trial court has refused to grant a new trial on the question of damages, the question then becomes whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, whether the jury failed to respond to reason." *932 Walmart Stores, Inc. v. Johnson, 807 So.2d 382, 392(¶ 27) (Miss.2001) (quoting Dorris v. Carr, 330 So.2d 872, 874 (Miss.1976)). "The party seeking the additur bears the burden of proving his injuries, loss of income, and other damages. We view the evidence in the light most favorable to the defendant, giving him all favorable inferences that may be reasonably drawn therefrom." Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1020(¶ 19) (Miss.2004) (quoting Maddox v. Muirhead, 738 So.2d 742, 743-44(¶ 5) (Miss.1999)). We review the trial court's denial of an additur under an abuse of discretion standard. Id.
¶ 39. Walker quotes section 41-9-119 of the Mississippi Code, which states: "Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable." Miss.Code Ann. § 41-9-119 (Rev. 2005). Walker then points out that she submitted an itemization of her medical expenses, totaling $43,690.40, the admission of which was uncontested by the defendants. However, as the defendants point out in their brief, "[t]he fact that the medical bills were authenticated, not hearsay and, therefore, admissible, has absolutely no relevance to the reasonableness and necessity of those charges."
¶ 40. The statute cited by Walker provides no relief to her for the simple reason that she did not conclusively prove that the bills in question were incurred as a result of her injury. It is that very causation that was contested by the defendants and their evidence. The only bills that were uncontested were those that Walker incurred immediately after the accident, which related to bruises to her knees and other minor injuries. Virtually every other injury, both physical and mental, claimed by Walker was strongly contested by the defendants' expert witnesses and other evidence. Furthermore, even if Walker had proven that the bills were incurred as a result of her injury, the bills act only as prima facie evidence. The Mississippi Supreme Court has clearly stated that such bills may be refuted by other evidence, such as the expert witness testimony and other evidence in this case. See Purdon v. Locke, 807 So.2d 373, 378-79(¶ 15) (Miss.2001).
¶ 41. Multiple expert witnesses offered on behalf of the defense contested both Walker's physical and mental injuries. Furthermore, Walker's own experts indicated that their diagnosis of Walker was dependent on the truthfulness of their discussions with her. In other words, the diagnoses in question were based on Walker's claims of pain and other injuries and problems; if Walker was not telling the truth, the diagnosis would be incorrect. Wilbourn, who was involved in the accident, testified at her deposition that the only injuries to Walker that she could recall was knee pain and a scratched face. In addition, multiple photographs were introduced of Walker after the accident, socializing with her friends in various locations, such as on Spring Break in Florida. Some of the pictures show Walker in odd poses, such as standing on the edge of a chair, or being carried on the back of another girl. Furthermore, it was revealed at trial that Walker had maintained high grades throughout college after the accident, and had graduated with honors. Walker also apparently took and did very well on the LSAT after the accident. Finally, individuals who had known and lived with Walker after the accident testified that they had never known of her to complain of pain or exhibit any other signs of having been injured in the accident. Although Walker claimed that she is no longer *933 able to work, Patsy Bramlett, a vocational rehabilitation counselor offered by the defense, testified that it was her opinion that "there has been no loss of earning capacity, no loss of future earning capacity, and . . . Walker would be able to engage in employment for which she is trained with her college education and be able to earn the same wage that she would have earned had she not been involved in the . . . accident." In short, there was ample evidence that many of the injuries claimed by Walker were either non-existent or were exaggerated.
¶ 42. Mississippi appellate courts have granted or affirmed an additur in multiple cases. However, in none of those cases have the damages or injuries been contested to the extent of the damages and injuries in this case. See, e.g., Gaines v. K-Mart Corp., 860 So.2d 1214, 1220-21 (¶¶ 25-30) (Miss.2003) (affirming additur where jury verdict found defendant only 5% liable, but plaintiff was not awarded 5% of the uncontradicted damages); Scott Prather Trucking, Inc. v. Clay, 821 So.2d 819, 822(¶ 13) (Miss.2002) (affirming additur where stipulated and uncontested damages clearly exceeded jury award); Maddox, 738 So.2d at 744-45(¶ 10) (granted additur where "the jury award fail[ed] to compensate Maddox for medical bills that were uncontested by either defendant."); Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945-46 (Miss.1992) (granted additur where jury awarded only medical expenses and there was uncontested evidence that claimant also suffered uncompensated pain); Pham v. Welter, 542 So.2d 884, 889 (Miss.1989) (granted additur where jury's verdict clearly "ignored" the ample evidence concerning the claimant's past and future pain and suffering, as well as the claimant's partial permanent disability; jury verdict was barely above the amount of undisputed medical expenses).
¶ 43. We find Green v. Grant, 641 So.2d 1203 (Miss.1994) to be particularly instructive. At the Green trial, which was on damages alone, both Grant and Green presented conflicting evidence as to the extent of Green's damages. Green, 641 So.2d at 1204. The parties stipulated that Green had incurred $2,118.25 in medical expenses, although "Grant did not stipulate that these expenses were necessary." Id. Green also claimed other damages. Id. at 1205. After hearing all the evidence, the jury awarded Green only $2,000. Id. at 1207. The Mississippi Supreme Court found that this award was proper and an additur was not required, noting:
testimony presented on behalf of Grant tended to prove that Green was not seriously injured . . . [and] the issue of the extent of Green's injuries, the reasonableness and necessity of her medical expenses, and the reasonableness and necessity of her lost income were seriously contested. . . . Viewing the conflicting evidence presented in the instant case, the verdict does not appear to be either against the overwhelming weight of the evidence or so inadequate as to evidence bias, passion, or prejudice on the part of the jury.
Id. at 1209-10. The situation in the case at bar is much the same.
¶ 44. The jury's finding of damages in the amount of $14,000 is greater than the uncontested expenses incurred by Walker. Because of the heavily contested nature of the rest of the damages, the jury was not required to find damages in the total amount submitted by Walker. In short, the jury's award of damages in this case does not "shock the conscience," nor does it "indicate bias, passion and prejudice on the part of the jury." The court did not abuse its discretion in declining to grant an additur.
*934 Motion for a New Trial
¶ 45. "The motion for a new trial has only been employed in `rare cases when there would be injustice either in allowing the verdict to stand or in granting a j.n.o.v.'" Hamilton v. Hammons, 792 So.2d 956, 965(¶ 44) (Miss.2001) (quoting C & C Trucking Co. v. Smith, 612 So.2d 1092, 1099 (Miss.1992)). Rule 59 of the Mississippi Rules of Civil Procedure allows a trial judge to grant a new trial if so required by justice. Justice requires the granting of a new trial "when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result from bias, passion, and prejudice." Hamilton, 792 So.2d at 965(¶ 44) (citations omitted). As with an additur, we review the trial court's denial of a motion for a new trial under an abuse of discretion standard. Id. As such, we give "substantial weight, deference and respect to the decision of the trial judge." Id. (citing C & C Trucking Co., 612 So.2d at 1099).
¶ 46. Walker bases her contention that the court erred in failing to grant a new trial solely on the basis that the jury's award was so low that it shocks the conscience, evinces "bias, prejudice, and passion," and was contrary to the overwhelming weight of the evidence.
¶ 47. As we have already discussed, we do not find that the jury's award was so low as to shock the conscience or evince bias on the part of the jury. We also do not find that the jury's decision is against the overwhelming weight of the evidence. Much evidence was generated in this trial, both for and against Walker's theory of the case. Each theory expounded by Walker's expert witnesses was contradicted by the testimony of other expert witnesses. Evidence indicated that after the accident Walker did well in school and was able to perform light work. "[W]hen evidence is in conflict, the jury is the sole judge of both the credibility of a witness and the weight of his testimony." Ill. Cent. R.R. Co. v. Hawkins, 830 So.2d 1162, 1183(¶ 60) (Miss. 2002) (quoting Weathersby Chevrolet Co. v. Redd Pest Control Co., 778 So.2d 130, 133(¶ 10) (Miss.2001)). As the fact-finder, the jury in this case was entitled to believe whomever it found to be most credible. In light of the conflicting evidence and contested nature of the vast majority of Walker's damages, the court did not abuse its discretion in refusing to grant a new trial.
¶ 48. This issue is without merit.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF YALOBUSHA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Gann was a truck driver for Benchmade at the time of the accident that led to Walker's alleged injuries.
[2] Walker claims in her brief that Hannah testified that Walker's speed was "the cause of the accident." We find this claim to be unsupported by the record. Hannah clearly testified on the stand that he found that speed was not a factor in the accident. Instead, this testimony appears to have been introduced to discredit Walker's expert witness who had testified regarding the speeds of the vehicles and time it would have taken for Walker to reach Gann's truck.
[3] Although we find no error in the trial court's admission of the expert testimony here, this opinion should not be read to mean that parties should not be thorough and comprehensive in providing the information required to be produced pursuant to Rule 26 of the Mississippi Rules of Civil Procedure concerning the designation of experts and the subject matter on which the expert is expected to testify. Normally, the designation of the subject matter should include any rebuttal testimony that the expert is expected to give, although such rebuttal testimony is not specifically required by the rule.
[4] Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
[5] Walker never requested a hearing, nor made any motion challenging Hannah's admissibility as an expert witness.