# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01027-COA

FRANK STOCKETT                                                    APPELLANT

v.

CLASSIC MANOR BUILDERS, INC. AND                                 APPELLEES
ROGER H. MORRIS, JR.

DATE OF JUDGMENT:            03/30/2016
TRIAL JUDGE:                HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:  RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    KEITH D. OBERT
                            ROY GREGG ROGERS
                            WILLIAM F. BROWN
ATTORNEYS FOR APPELLEES:    DAVID L. SANDERS
                            JOHN BRIAN HYNEMAN
NATURE OF THE CASE:         CIVIL - PERSONAL INJURY
DISPOSITION:                AFFIRMED - 09/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In 2011, Frank Stockett was involved in a motor-vehicle accident with Roger Morris

in Flowood, Mississippi.  At the time of the accident, Morris was driving a company vehicle

for Classic Manor Builders Inc. (Classic Manor).  Stockett sustained injuries as a result of

the accident, prompting litigation.  A jury trial was held, wherein Morris and Classic Manor

were found to be 100% at fault.  The jury awarded Stockett $50,000.  Stockett moved for a

new trial or, in the alternative, an additur, which the circuit court denied.  Displeased with

the amount awarded, Stockett appeals.  Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.    On October 11, 2011, Stockett, while traveling in the left-hand lane of Lakeland Drive, began slowing with the traffic ahead of him. Morris, in the course and scope of his employment for Classic Manor, was traveling immediately behind Stockett. Stockett stated that he realized Morris was approaching his vehicle at a pace too rapid to stop in time. Morris stated that, at the time, he was traveling approximately fifteen to twenty miles per hour before attempting to brake heavily and veer left in order to avoid a collision. Morris ultimately struck the rear of Stockett's vehicle.

¶3.    Stockett claimed the impact caused his seatbelt to restrain his left shoulder and left him dazed; he testified to a burning sensation in his shoulder while at the scene. Soon thereafter he went to the emergency room, where he allegedly complained of pain in his left shoulder, left knee, back, and head.[1] The medical record created from this emergency-room visit, however, reflected only that Stockett "complain[ed] of pain involving the lower portion of [his] back and arms." Stockett was given a prescription and advised to visit his family physician, which he did. His family physician ordered physical therapy and injections, but Stockett's pain persisted. He was then referred to Dr. Scott Jones, an orthopedic surgeon.

¶4.    Dr. Jones performed a physical examination of Stockett's shoulder and concluded that Stockett had pain over his AC joint, pain with rotation, and a weakened rotator cuff. An MRI taken later revealed that Stockett had a superior labral tear and AC-joint arthrosis. In March 2012, Dr. Jones performed surgery to alleviate Stockett's pain. Stockett began postsurgery

---

[1] Stockett's shoulder injury was the primary injury litigated below; as such, his other injuries will not be discussed in detail.

physical therapy and returned to work with restrictions on the use of his left shoulder. In July 2012, Dr. Jones concluded Stockett had reached maximum medical improvement with 0% permanent partial impairment (PPI), and released Stockett from his care.

¶5.    Stockett returned to Dr. Jones in November 2013, some sixteen months later, complaining of pain in his shoulder from overhead use. Dr. Jones administered an injection and prescribed Stockett anti-inflammatory medication with supplemental physical therapy. In January 2014, after Stockett had again returned to Dr. Jones, Dr. Jones revised his assessment of Stockett to 10% PPI, based largely upon what Stockett had to conveyed to him pain-wise. Dr. Jones, however, testified that there was "no structural or anatomical reason" for Stockett's pain, and that Stockett may have been embellishing his pain. Nonetheless, Dr. Jones was convinced to a reasonable degree of medical certainty that the accident caused Stockett's initial shoulder injury.

¶6.    Morris and Classic Manor's expert, Dr. William McCraney, testified otherwise, stating that in his professional opinion, Stockett's torn labrum was not related to the accident. Dr. McCraney concluded such after review of Stockett's medical records from the emergency-room visit, his family physician, and Dr. Jones. In addition, Dr. McCraney opined the fact that Stockett waited fifteen days after the accident to lodge a formal complaint with this family physician regarding the burning or pain in his shoulder weighed against his finding that the accident caused the injury—this statement contradicted Stockett's testimony that he complained of the shoulder pain at the emergency room. Dr. McCraney further stated that the type of injury Stockett experienced was not common based upon the position Stockett's

3

shoulder would have been in during the accident.

¶7.    At the conclusion of trial, the jury found Morris and Classic Manor 100% at fault. Stockett proved medical expenses of $41,882.18, and lost wages of $3,397.08, totaling $45,279.26 in actual damages. The jury ultimately awarded Stockett $50,000. Stockett then moved for a new trial or, in the alternative, an additur, claiming that the verdict was contrary to the overwhelming weight of the evidence, or that the jury evinced bias, passion, and prejudice against Stockett. The circuit court denied his motion. Stockett appeals.

## DISCUSSION

¶8.    Stockett argues that the jury award is so inadequate as to be against the weight of the evidence, and that the circuit court erred in refusing to enlarge the award via an additur. Morris and Classic Manor assert that the jury, as the trier of fact, was presented all the evidence, weighed the same, and rendered a verdict above and beyond Stockett's actual damages, which should stand on appeal.

### I.    Additur

¶9.    A court's power to impose an additur derives from Mississippi Code Annotated section 11-1-55 (Rev. 2014), which states:

> The supreme court or any other court of record in a case in which the money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only.

"Thus, an additur may be awarded: (1) if the court finds that the jury was influenced by bias,

prejudice, or passion or (2) if the damages were contrary to the overwhelming weight of credible evidence." *Rodgers v. Pascagoula Pub. Sch. Dist.*, 611 So. 2d 942, 944 (Miss. 1992).

¶10. "[Stockett] relies on [the Mississippi Supreme] Court's general line of decisions holding that evidence of corruption, passion, prejudice[,] or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." *Id.* at 944-45. Stockett's primary assertion, then, is that an additur was warranted "[g]iven the ridiculously small amount of the verdict over and above [his] actual medical expenses and lost wages, [such that] it is apparent that the verdict was the product of the jury's bias, passion[,] or prejudice[.]" This alleged inference—that the $4,720.74 award above and beyond his actual damages evinces jury bias, passion, or prejudice—is the *sole* foundation for Stockett's claim that an additur is required.

¶11. "The scope of appellate review in an additur appeal is limited to determining whether the trial court abused its discretion." *Id.* at 945. "[The supreme court] has further noted that the party seeking the additur has the burden of proving his injuries, damages[,] and loss of income." *Id.* "In determining whether this burden is met, [an appellate court] must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom." *Id.*

¶12. "Awards fixed by jury determination are not merely advisory and will not under the general rule be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." *Id.* "This is because

the amount of damages awarded is primarily a question for the jury." *Id.* "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore *should never be employed without great caution.*" *Id.* (emphasis added).

¶13.    To support his argument, Stockett attempts to analogize his case with four supreme court cases wherein additurs were awarded for uncompensated pain and suffering.[2] These cases are all distinguishable from Stockett's, and we will discuss each in turn.

¶14.    In *Rodgers*, the plaintiff was a passenger in a car that collided with a Pascagoula public-school bus. *Id.* at 943. Rodgers presented proof of actual damages, pain and suffering, and a PPI of 40% for his entire body. *Id.* at 944. The jury awarded Rodgers damages for his medical expenses alone. *Id.* Rodgers moved for an additur, but the circuit court denied him relief. *Id.* On appeal, our supreme court held an additur was warranted because Rodgers presented undisputed proof of pain and suffering. *Id.* at 945. Thus, because the jury awarded medical expenses *alone*—despite the uncontested proof of pain and suffering—the *Rodgers* court found the verdict to be against the overwhelming weight of the evidence. *Id.* at 945-46.

¶15.    Similarly, in *Moody*, Moody was rear-ended by an RPM employee acting in the course and scope of his employment. *Moody*, 659 So. 2d at 878. Moody presented uncontested proof of pain and suffering, but the jury awarded him damages only in the amount of his medical expenses. *Id.* at 881. Displeased, Moody moved for a new trial or, in the alternative,

---

[2] *Rodgers*, 611 So. 2d 942; *Harvey v. Wall*, 649 So. 2d 184 (Miss. 1995); *Moody v. RPM Pizza Inc.*, 659 So. 2d 877 (Miss. 1995); and *Pham v. Welter*, 542 So. 2d 884 (Miss. 1989).

an additur. *Id.* at 878. The circuit court denied his motion, and Moody appealed. *Id.* On appeal, the *Moody* court did as the *Rodgers* court did, and found that because Moody's pain and suffering was uncontested, a jury award for medical expenses alone was against the overwhelming weight of the evidence. *Id.* at 883. Unlike *Rodgers* and *Moody*, however, Stockett was awarded damages above his actual damages—thus, we find *Rodgers* and *Moody* inapplicable here.

¶16. Stockett next relies upon *Harvey*. *Harvey* involved an automobile collision that left Harvey initially unconscious and eventually complaining of knee pain. *Id.* at 185. Harvey presented evidence of medical expenses and lost wages totaling $5,279.20, as well a 10% PPI of his leg. *Id.* at 186, 189. The jury, however, awarded Harvey only $5,300 in damages—a mere $20.80 beyond his actual damages. *Id.* at 186. Harvey moved for an additur, which the circuit court denied. *Id.* On appeal, the supreme court found that "the proof [was] uncontradicted that [Harvey] did sustain some pain and suffering." *Id.* at 188. As such, the *Harvey* court found an additur was necessary, as $20.80 did not adequately compensate Harvey for his pain and suffering in light of the uncontradicted evidence. *Id.* at 190.

¶17. Lastly, Stockett relies on *Pham*, 542 So. 2d 884. Pham was involved in an automobile collision that resulted in immediate emergency surgery and twelve days spent in the intensive-care unit. *Id.* at 888. Pham presented evidence of permanent deformity to his leg, as well as a permanent limp. *Id.* at 888-89. His total damages amounted to $28,682.70, which encompassed medical expenses and lost wages. *Id.* at 889. Nevertheless, the jury awarded Pham only $30,000, despite the uncontested evidence of his pain and suffering. *Id.*

Pham moved for an additur, which the circuit court denied. *Id.* at 885. In light of Pham's severe injuries, as well as the uncontested proof of his pain and suffering, the supreme court found an additur was warranted. *Id.* In finding such, the *Pham* court stated that the award of $1,327.30 beyond Pham's actual damages shocked the conscious, and ignored Pham's evidence as to his pain, suffering, and future disability. *Id.*

¶18. But unlike Harvey and Pham, who received nominal amounts for their pain and suffering, Stockett received a sum of $4,720.74 above his actual damages. *See DePriest v. Barber*, 798 So. 2d 456, 459 (¶11) (Miss. 2001) (holding an award of $3,000 for pain and suffering "is far from a level that 'shocks the conscience'"). And, as will be discussed in further detail below, *Harvey* and *Pham* both involved uncontested evidence of pain and suffering, which is not the case here. Thus, despite Stockett's best arguments, we likewise find *Harvey* and *Pham* inapplicable.

¶19. Therefore, in light of the facts of this case compared to the cases discussed above, we cannot say that the jury's award was so "inadequate as to shock the conscience and to indicate bias, passion[,] and prejudice on the part of the jury[.]" *Walker v. Gann*, 955 So. 2d 920, 931-32 (¶38) (Miss. Ct. App. 2007) (quoting *Walmart Stores Inc. v. Johnson*, 807 So. 2d 382, 392 (¶27) (Miss. 2001)). As such, we find no abuse of discretion by the circuit court in denying Stockett's motion for an additur. This issue is without merit.

## II. Motion for a New Trial

¶20. We next address whether the circuit court erred in denying Stockett a new trial. "The motion for a new trial has only been employed in rare cases when there would be injustice

either in allowing the verdict to stand or in granting a [judgment notwithstanding the verdict.]" *Walker*, 955 So. 2d at 934 (¶45). "Rule 59 of the Mississippi Rules of Civil Procedure allows a trial judge to grant a new trial if so required by justice." *Id.* "Justice requires the granting of a new trial when the verdict is against the overwhelming weight of the evidence[.]" *Id.* (internal quotations omitted). "As with an additur, we review the trial court's denial of a motion for a new trial under an abuse of discretion standard." *Id.* "As such, we give 'substantial weight, deference[,] and respect to the decision of the trial judge.'" *Id.* (quoting *Hamilton v. Hammons*, 792 So. 2d 956, 965 (¶44) (Miss. 2001)).

¶21.    Stockett asserts that the circuit court erred in failing to grant a new trial solely on the basis that the jury's award was so inadequate that it shocks the conscience, evinces bias, prejudice, and passion, and was contrary to the overwhelming weight of the evidence. As discussed above, however, we do not find that the jury's award of $50,000 was so inadequate as to shock the conscience or evince bias on the part of the jury. We likewise do not find that the jury's decision is against the overwhelming weight of the evidence.

¶22.    We find such because the record before us presents a large degree of conflicting evidence. Here, the jury heard Stockett testify that he complained of shoulder pain both at the scene of the accident and to the treating emergency-room physician. Medical records related to the incident, however, revealed no documentation of Stockett's left-shoulder pain until fifteen days after the accident. The jury likewise heard testimony from Dr. Jones regarding his treatment of Stockett, as well as his statement that fifteen days was a "seemingly long time not to mention [the injury]." The jury further heard Dr. Jones state that

9

he had released Stockett with 0% PPI (i.e., full recovery)—and because of that, he found Stockett's return some sixteen months later suspicious, as there was "no structural or anatomical reason" for Stockett's pain; this caused Dr. Jones to conclude Stockett possibly may have been embellishing his pain. And though Dr. Jones was convinced to a reasonable degree of medical certainty that the accident caused Stockett's initial shoulder injury, Dr. McCraney testified otherwise. Lastly, the circuit court, in its order denying Stockett's posttrial motions, found:

> [Stockett's] evidence concerning his shoulder injury was certainly contradicted. The jury may well have found that the shoulder injury was not related to the accident and awarded damages for lost wages, medical bills unrelated to the shoulder[,] and for pain and suffering.

¶23. "When evidence is in conflict, the jury is the sole judge of both the credibility of a witness and the weight of his testimony." *Walker*, 955 So. 2d at 934 (¶47). "As the fact-finder, the jury in this case was entitled to believe whomever it found to be most credible." *Id.* Therefore, in light of the conflicting evidence present before us, we find the circuit court did not abuse its discretion in refusing to grant a new trial. This issue is without merit.

**CONCLUSION**

¶24. In sum, when viewing the evidence in the light most favorable to Morris and Classic Manor, we find no abuse of discretion by the circuit court in denying Stockett's motion for an additur—put simply, the damages are not so inadequate as to shock the conscious or evince bias, passion, or prejudice by the jury. *See generally Rodgers*, 611 So. 2d 942. Moreover, the presence of conflicting evidence leads us to find that the circuit court did not

10

abuse its discretion in denying Stockett a new trial. *See Walker*, 955 So. 2d at 934 (¶45). As such, we affirm the judgment of the circuit court.

¶25.  **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  BARNES, J., NOT PARTICIPATING.**