# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00722-COA

ROGER DALE LATHAM                    APPELLANT/CROSS-APPELLEE

v.

TERRY W. JOHNSON, JOHN W. ROBINSON III      APPELLEES/CROSS-APPELLANTS
AND CRAIG TRAHAN

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2016 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. EDWARD RAINER |
| ATTORNEYS FOR APPELLEES: | JOHN W. ROBINSON III |
| | JOHN P. SNEED |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED - 06/26/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Roger Dale Latham owned land in the Mississippi Delta. He used his land primarily to hunt ducks.

¶2. In 2004, Latham hired Terry W. Johnson to perform excavation work on his land. Latham and Johnson continued their business relationship with other projects, and they became friends.

¶3. John W. Robinson III and Craig Trahan were also Latham's friends. Robinson and Trahan paid Latham for the right to hunt ducks on his land.

¶4. In the summer of 2007, Johnson told Latham about his interest in certain land in Sunflower County, Mississippi. This tract of land consisted of 170 acres of abandoned catfish ponds, and it was offered for sale at a price of $750 per acre. Johnson and Latham looked at the property and agreed that it would be a good investment for duck hunting. They determined that the property was offered for sale at an amount below the land's market value. They asked Robinson, Trahan, and Mike Dickson (another of Latham's friends) if they were interested in purchasing the property. Dickson declined.

¶5. Latham, Johnson, Robinson, and Trahan met in August of 2007 to look at the property. They met again at the property on September 15, 2007, and they discussed the purchase of the property in more detail. Their discussions included the financing, improvements, and access rights to the property.

¶6. According to Johnson, Robinson, and Trahan, they agreed to form a partnership to purchase the property during their September 2007 meeting. In fact, Johnson, Robinson, and Trahan claim that they, along with Latham, agreed to purchase the property as a partnership, and each man would contribute an equal amount of money for the purchase. In addition, they testified that they agreed that Latham would investigate financing options for the purchase, Johnson would determine what improvements needed to be made to the property, Trahan would bush hog the property, and Robinson would research and investigate the adjacent landowner's claim of access rights over the property.

¶7. On October 8, 2007, Latham submitted a loan application to the Federal Land Bank Association of North Mississippi (the "Land Bank") for the proceeds necessary to purchase

2

the property. On the loan application, in the section about ownership, Latham checked "partnership." Johnson, Robinson, and Trahan contend they were not aware of Latham's loan application with the Land Bank.

¶8. In October of 2007, Latham called Robinson to discuss the financing. Robinson testified that Latham said he had talked to Johnson and Trahan, and because of their personal issues,[1] the group should finance the purchase of the property in Latham's name, individually. Latham also said that the group could convey title to the property to the partnership when they were ready.

¶9. Johnson, Robinson, and Trahan also testified that the decision to finance the purchase of the property in Latham's name only was a group decision. They agreed to share equally in the expenses and understood that, upon Latham's receipt of title to the property, it would be partnership property, not Latham's property individually.

¶10. On October 18, 2007, Latham submitted a second loan application to the Land Bank. This application was solely in his name. As a result, Latham obtained a loan commitment for $144,500, which included the purchase price of $127,500 and an additional amount for settlement charges, adjustments, and property improvements.

¶11. Latham executed a promissory note to the Land Bank, on November 8, 2007, and closed on the purchase of the property. A warranty deed was executed, and the property was conveyed to Latham, individually. The warranty deed was recorded among the land records

[1] Johnson and Trahan were concerned about borrowing money to purchase the property and including their names on the deed as owners of the property. Apparently, Johnson was going through a divorce, and Trahan had a tax lien with the Internal Revenue Service.

of Sunflower County. At the closing, Latham was disbursed $13,454.58 for property improvements. Latham deposited this money into a bank account at Wachovia Bank. The account was opened in the names of Latham and his wife d/b/a "Lonesome Pine." Shortly after closing, Latham gave the original closing documents to Robinson for safekeeping.

¶12. The promissory note was to be paid in fifteen annual installments beginning October 1, 2008. On October 1, 2008, Trahan wrote a check to Latham for $3,626.40, and he included a note on the memo line of the check that it was for "land." On October 19, 2008, Johnson wrote a check to Latham for $3,625.40, and he included a note on the memo line of the check that it was for "land payment." On October 22, 2008, Robinson wrote Latham a check for $3,625.40, and he included a note on the memo line that it was for "Lonesome Pine." The checks totaled $10,877.20, and they were deposited in Latham's "Lonesome Pine" bank account at Wachovia on October 31, 2008, along with Latham's check in the amount of $3,623.60. Shortly thereafter, Latham wrote a check from the "Lonesome Pine" account and paid the Land Bank the full amount of the 2008 payment due.

¶13. The following year, in 2009, Johnson, Robinson, and Trahan again gave Latham checks for their share of the Land Bank note. On October 21, 2009, Johnson wrote a check to Latham for $3,668 for "Land Payment Lonesome Pine." On October 27, 2009, Robinson wrote a check to Latham for $3,700 for "Lonesome Pine." On November 1, 2009, Trahan wrote a check to Latham for $3,787. The checks totaled $11,155, and Latham deposited these checks and his check for $3,115.81, in the "Lonesome Pine" account at Wachovia. Latham then wrote a check from the "Lonesome Pine" account to the Land Bank for the

4

amount necessary for the 2009 loan payment.

¶14.    In early 2010, Mike Retzer bought the property adjacent to Lonesome Pine.  Gil Ray, Retzer's manager, hired Johnson to do some work on Retzer's property.  As part of their discussion, Ray informed Johnson that he thought Retzer would also be interested in buying Lonesome Pine.  Johnson then told Latham, Robinson, and Trahan about Retzer's possible interest in the property.

¶15.    Retzer called Latham and offered to buy Lonesome Pine.  Retzer agreed to purchase Lonesome Pine for a price of $2,150 per acre or $365,500.[2]  The sale closed on March 16, 2010.  Before the closing, Latham received $15,000 as an earnest money deposit.  As a result of the closing, the Land Bank note was paid in full, along with all other expenses of the sale – including commissions, taxes, and attorney fees.  Latham received a check for the net proceeds in the amount of $223,963.31.

¶16.    On March 31, 2010, Latham deposited this check into his company's commercial checking account at Trustmark National Bank.  The check was not deposited in the Lonesome Pine account.

¶17.    On May 20, 2010, Robinson wrote a letter to Latham.  In this letter, Robinson asked for all information and documents related to the sale of the property; the amount and whereabouts of all partnership funds in his possession, custody or control; and all other information and documents necessary for the partnership to settle its accounts and to make final distributions to the partners.  Robinson indicated that the letter was also on behalf of

---

[2] The evidence indicates that the total purchase price was actually $368,420.

5

Johnson and Trahan.

¶18. Latham testified that he did not receive this letter. However, Latham admitted that he went to Robinson's house on May 23, 2010. Latham testified that he spent two hours with Robinson discussing this matter. Latham also testified that Robinson made clear, during this meeting, that there was a partnership among Latham, Johnson, Robinson, and Trahan.

¶19. After several months, on September 25, 2010, Robinson had another conversation with Latham. He again explained to Latham that the proceeds from the sale, $223,963.31, and any remaining funds borrowed from the Land Bank for property improvements, should be divided equally among the partners. The following week, Johnson had another conversation with Latham. In this conversation, it was clear to Robinson that Latham did not agree with his position.

¶20. On March 14, 2011, Johnson, Robinson, and Trahan filed a complaint against Latham in the Circuit Court of Sunflower County. The complaint asserted claims for breach of partnership agreement; breach of fiduciary duties; misappropriation and conversion of partnership assets; malicious, intentional, and wanton conduct; and fraud, deceit, and misrepresentation. The complaint asserted claims for both compensatory and punitive damages, and it asked for equitable relief in the form of an accounting, judicial dissolution of the partnership, and settlement of accounts.

¶21. Latham served his answer and defenses. As part of his answer, Latham claimed that venue was improper in Sunflower County. Latham filed a motion to dismiss the case for lack of venue or, in the alternative, to transfer the case to the Circuit Court of Rankin County,

6

where Latham resided. The circuit court found a substantial alleged act or omission and a substantial event that caused injury had occurred in Sunflower County and denied the motion.

¶22. Latham also asserted an affirmative defense on the grounds that the claims were barred by the statute of limitation and statute of frauds. Latham filed a motion to dismiss on these grounds, and it too was denied.

¶23. In his answer, Latham denied that a partnership existed. He testified that the money paid by Johnson, Robinson, and Trahan in 2008 and 2009 was "only for rights to hunt" on the property.

¶24. At trial, Latham agreed that the parties formed a partnership to purchase the property in September 2007. He further agreed "that the idea was that all of the partners would contribute equally, both money and time and effort." However, Latham claimed that sometime between October 8 and October 18, 2007, he advised Johnson, Robinson, and Trahan that "they [would] need to sign a promissory note if they wanted it to be a partnership." Because Johnson, Robinson, and Trahan did not submit individual loan applications to the Land Bank by October 18, 2007, Latham claimed that the partnership no longer existed. However, Johnson, Robinson, and Trahan disagreed, and each testified that Latham never asked them to submit a loan application or to sign a promissory note. They also testified that the 2008 and 2009 checks they sent to Latham were for their one-fourth shares of the Land Bank note.

¶25. This case was tried before a jury in Sunflower County. The jury returned a verdict for Johnson, Robinson, and Trahan in the amount of $176,352.24. The circuit court denied their

7

request to for a hearing on punitive damages. The court also denied their motion for attorney fees and prejudgment interest but granted their motion for post-judgment interest. The court entered a judgment that was consistent with the jury's verdict. Latham then filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The court denied this post-trial motion.

¶26. Latham now appeals from this judgment, and he asserts ten assignments of error. He argues that the circuit court erred in: (1) denying his motion to dismiss or, alternatively, to transfer venue; (2) denying his motion to dismiss based on the applicable statutes of limitation; (3) denying his motion to dismiss based on the statute of frauds; (4) denying his motion to dismiss for Johnson, Robinson, and Trahan's failure to perform an accounting; (5) denying his ore tenus motion regarding an alleged discovery violation; (6) allowing the use of a deposition for impeachment; (7) allowing the admission of parole evidence to explain a series of emails between Robinson and a third party, (8) denying his motion for a mistrial; (9) denying his motion for a JNOV; and (10) denying his motion for a new trial.

¶27. Johnson, Robinson and Trahan cross-appeal and argue the circuit court erroneously denied their request for prejudgment interest.

ANALYSIS

I. Latham's Appeal

A. Venue

¶28. Latham contends that the circuit court committed reversible error when it determined that venue was proper in Sunflower County, Mississippi. Latham argues that the court

8

should have dismissed the case or transferred venue to Rankin County, where he resided. Latham claims venue was improper in Sunflower County because "no party to the suit retain[ed] any interest [in] said real property" and "the real property is no longer vested in any of the parties to this action."

¶29. "The standard of review for a change in venue is abuse of discretion." *Hedgepeth v. Johnson*, 975 So. 2d 235, 237 (¶7) (Miss. 2008). A circuit court's decision on venue will not be disturbed "unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Id*.

¶30. Venue is determined by Mississippi Code Annotated section 11-11-3(1)(a)(i) (Rev. 2004), which provides:

> Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where [1] the defendant resides, or, [2] if a corporation, in the county of its principal place of business, or [3] in the county where a substantial alleged act or omission occurred or [4] where a substantial event that caused the injury occurred.

¶31. Latham cites section 11-11-3 for the proposition that since he is a resident of Rankin County, Mississippi, he was entitled to venue in Rankin County. If the plaintiffs had filed the complaint in Rankin County, under Mississippi Code Annotated section 11-11-3, venue would have been proper in Rankin County. But, the plaintiffs did not file their complaint in Rankin County.

¶32. Because the complaint was filed in Sunflower County, we must determine whether venue was proper there. The plaintiffs argue that venue is proper in Sunflower County

9

because that is "in the county where a substantial alleged act or omission occurred or where a substantial event that caused the injury occurred." *Id.*

¶33. We agree. As discussed above, Sunflower County is where the land was located, where the decision was made to purchase the property, where the partnership was formed, and where the sale occurred that resulted in the profit. Indeed, virtually all of the conduct occurred that gave rise to the plaintiffs' claims and where the events that caused the injury occurred. The fact that the property was subsequently sold to a third party and "is no longer vested in any of the parties to this action" is of no consequence.

¶34. We find that venue was proper in Sunflower County, pursuant to section 11-11-3(1)(a)(i), and the circuit court did not abuse its discretion in denying Latham's motion.

## B.    *Statutes of Limitation*

¶35. Latham next argues the circuit court erred in denying his motions to dismiss for Johnson, Robinson, and Trahan's failure to timely assert their claims within the applicable statutes of limitations. "This Court applies a de novo standard of review to the statute of limitations." *Fletcher v. Lyles*, 999 So. 2d 1271, 1276 (¶20) (Miss. 2009).

¶36. Latham asserts the plaintiffs' intentional-tort claims were subject to a one-year statute of limitations under Mississippi Code Annotated section 15-1-35 (Rev. 2015) and that their remaining claims were governed by a three-year statute of limitations under Mississippi Code Annotated sections 15-1-29 (Rev. 2015) and 15-1-49 (Rev. 2015). However, regardless of the claim or the statute that applies, the limitation period does not begin to run until the cause of action accrues.

¶37. "[A] cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." *Fletcher*, 999 So. 2d at 1277 (¶23) (internal quotation marks omitted). "[A] statute of limitations begins to run when all the elements of a tort, or cause of action, are present." *Id.* While there are various elements to the separate claims asserted by the plaintiffs, all require the common element of damages. Thus, until Johnson, Robinson, and Trahan suffered damages, their cause of action did not accrue, and the statutes of limitation did not begin to run.

¶38. Here, Johnson, Robinson, and Trahan allege to have suffered damages as a result of Latham's refusal to turn over proceeds from the sale of the property, as well as the remaining funds borrowed for improvements to the property. The property was not sold, and Latham did not receive the sale proceeds until March 16, 2010. As the complaint was filed on March 14, 2011, the plaintiffs' claims were timely asserted within the applicable statutes of limitation. Accordingly, the circuit court did not err in denying Latham's motions.

### C. Statute of Frauds

¶39. Latham next argues the circuit court erred in denying his motion to dismiss based on the statute of frauds. "This Court reviews de novo a [circuit] court's grant or denial of a motion to dismiss." *Delta Health Group, Inc. v. Estate of Pope ex. rel. Payne*, 995 So. 2d 123, 125 (¶9) (Miss. 2008).

¶40. Our statute of frauds states, in part, that "[a]n action shall not be brought whereby to charge a defendant or other party . . . upon any contract for the sale of lands . . . unless . . . the promise or agreement upon which such action may be brought . . . shall be in writing, and

11

signed by the party to be charged therewith . . . ." Miss. Code Ann. § 15-3-1(c) (Rev. 2015). Latham argues that Johnson, Robinson, and Trahan's alleged verbal partnership agreement to purchase the property in Sunflower County was a contract for the sale of lands and consequently barred by the statute of frauds. We disagree.

¶41. Under the Mississippi Uniform Partnership Act, Mississippi Code Annotated section 79-13-101(9) (Supp. 2015), a partnership agreement is defined as an "agreement, whether written, oral or implied, among the partners concerning the partnership, including amendments to the partnership agreement." Here, Johnson, Robinson, and Trahan assert that the parties formed their partnership for the purpose of investing in land for a profit. While the partnership may have been formed for the purpose of buying and selling land, the verbal partnership agreement to purchase, improve, and sale the property for profit does not constitute a contract for the sale of lands within the statute of frauds. The plaintiffs' claims do not involve a dispute over a contract for the sale of lands. Instead, the plaintiffs' claims involve a dispute over partnership profits and assets. Nothing in sections 15-3-1(c) or 79-13-101(9) suggest that an otherwise enforceable verbal partnership agreement constitutes a contract for the sale of lands under the statute of frauds simply because the purpose of the partnership includes the purchase of real estate.

¶42. We find no merit to this issue. Accordingly, the circuit court did not err in denying the motion to dismiss.

### D. Accounting

¶43. Latham next argues the circuit court lacked jurisdiction over Johnson, Robinson, and

Trahan's damages claim since an accounting was never ordered or completed. However, under Mississippi Code Annotated section 79-13-405(b)(1)-(2) (Rev. 2013), an accounting is not required before a partner may assert a claim against another partner to enforce the partner's rights under the partnership agreement.

¶44. Johnson, Robinson, and Trahan filed an action to enforce their rights under the partnership agreement, including their right to an equal share of the partnership profits, to information concerning the partnership's business and affairs, and to compel Latham to abide by his fiduciary duties and duties of care to the partnership and his partners. As an accounting was not required under section 79-13-405(b), Latham's argument fails.

### E. Discovery Violation

¶45. Latham next argues the circuit court abused its discretion and committed reversible error when it denied his ore tenus motion on the first day of trial to prohibit Johnson, Robinson, and Trahan from calling witnesses other than the parties due to an alleged discovery violation.

¶46. "[Circuit] courts have considerable discretion in discovery matters, and their decisions will not be overturned unless there is an abuse of discretion." *Beck v. Sapet*, 937 So. 2d 945, 948 (¶6) (Miss. 2006).

¶47. According to Latham, the circuit court should not have allowed the witnesses to testify since Johnson, Robinson, and Trahan did not supplement their response to an interrogatory before trial, requesting them to identify every person they intended to call as a witness at trial. However, as the circuit court properly noted, Latham was not prejudiced by this failure

13

to supplement discovery as "the list of potential witnesses for this trial was exchanged [in a pretrial order] as early as August [2014]." Thus, Latham was aware of the individuals whom Johnson, Robinson, and Trahan intended to call as witnesses long before his ore tenus motion was made at trial. Accordingly, we find no abuse of discretion in the circuit court's denial of Latham's ore tenus motion.

## F. Deposition Testimony

¶48. Latham further argues the circuit court erred when it allowed Johnson, Robinson, and Trahan's trial counsel to impeach Latham with a transcript of Latham's deposition testimony from his divorce proceeding. "The admission of deposition testimony is within the sound discretion of the [circuit] court." *Figueroa v. Orleans*, 42 So. 3d 49, 52 (¶8) (Miss. Ct. App. 2010). "Only if a substantial right is affected do errors in evidentiary rulings require reversal." *Id*.

¶49. The transcript of Latham's deposition testimony was not admitted into evidence or read into the record; it was only used for impeachment. Pursuant to Mississippi Rule of Civil Procedure 32(a)(1), "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of [a] deponent as a witness, or for any other purpose permitted by the Mississippi Rules of Evidence." Additionally, under Mississippi Rule of Civil Procedure 32(a)(2), "[t]he deposition of a party . . . may be used by an adverse party for any purpose."

¶50. Importantly, Latham's sole complaint is that "[t]he use to be made of the deposition was neither disclosed to [his] attorney nor was it put in the pretrial order." However, the

record indicates Johnson, Robinson, and Trahan had no obligation to disclose before trial their intent to "use" the transcript for impeachment, or to identify the transcript in the pretrial order. The pretrial order expressly excluded "exhibits to be used for impeachment only." Moreover, it is undisputed that Johnson, Robinson, and Trahan did not obtain a copy of Latham's deposition transcript until three days before trial. Thus, while Latham was aware of the transcript, Johnson, Robinson, and Trahan were unaware of its existence and the possibility that the transcript might be used for impeachment at the time the pretrial order was finalized and submitted to the circuit court.

¶51. We find no abuse of discretion in allowing the use of the deposition transcript for impeachment purposes.

### G. *Parole Evidence*

¶52. Latham next contends the circuit court erred when it allowed Robinson to testify about an email exchange between Robinson and a third party regarding the third party's claim of an easement across the subject property. The email exchange in question was offered into evidence by Latham and admitted without objection. Latham thereafter objected to Robinson's testimony regarding the emails, claiming it was inadmissible "parole testimony."

¶53. "[T]he admission or suppression of evidence is within the discretion of the [circuit] judge and will not be reversed absent an abuse of that discretion." *Anderson v. Anderson*, 961 So. 2d 55, 58 (¶4) (Miss. Ct. App. 2007). "Under the parole evidence rule, where a contract is not ambiguous, the intention of the contracting parties should be taken solely from the wording of the contract." *Smith v. Smith*, 872 So. 2d 74, 78 (¶11) (Miss. Ct. App. 2004).

Parole evidence is not admissible to contradict, vary, alter, add to, or detract from the written agreement. *Id*.

¶54.   Latham claims that Robinson was "trying to use parole testimony to interpret a written document."   He argues that because the emails "were all clear and unambiguous and complete on their face," the circuit court erroneously allowed Robinson "to interpret the emails."  We disagree.

¶55.   Robinson's testimony regarding the emails was not "parole testimony."  Robinson's testimony did not contradict, vary, alter, add to, or detract from the terms of a written agreement.  Instead, Robinson's testimony, which was subject to cross-examination, was simply an explanation of an email exchange he authored with a third party.  Overall, we find no abuse of discretion by the circuit court.

### H.     Motion for a Mistrial

¶56.   The record shows the jury initially returned with the following verdict: "We, the jury, find for the Plaintiffs and assess their damages at $235,136.32 ÷ 4 = 58,784.08 equal payment."  Because the jury's calculation showed a division by four, the circuit court found it was ambiguous.  The circuit court noted that although one could reasonably assume that one of the four shares was Latham's, clarification was nonetheless needed.  As a result, the circuit court sent a note to the jury, which stated: "Ladies and Gentlemen of the Jury: There are three Plaintiffs.  You have presented a verdict which calls for division of $235,136.32 by 4.  Please clarify your decision."  The jury subsequently responded, "Sale of Land Minus Payout of Loan."

16

¶57. The circuit court then brought the jury in and explained:

The note that I sent explained that there are three plaintiffs in this case and that the verdict that you brought out initially called for a sum of money to be divided by four which creates confusion as to what your actual verdict is, what the number is.

In response you sent out this note which says, the sale of the land minus the payoff of the loan. This still does not clearly say to us what your verdict is.

Will you please return and give us a number that you intend, a number, if any, that you intend to be the damages for the three plaintiffs. What is it that the three plaintiffs are to recover in this case? Okay. You may return.

¶58. After the jury left the courtroom, Latham's counsel moved for a mistrial and argued that the jury "did not know what its verdict [wa]s" and should not be allowed to "keep going back to the jury room to try and figure it out." The circuit court reserved ruling on the motion.

¶59. The jury subsequently sent another note to the circuit court and asked "what amount plaintiffs [were seeking]." The circuit court simply responded that it was unable to answer that question. Latham renewed his motion for a mistrial, which was denied.

¶60. The jury ultimately returned with the following verdict: "We, the jury, find for the Plaintiffs and assess their damages at $176,352.24."

¶61. Latham now claims the circuit court erroneously denied his motion for a mistrial. He argues "that the jury was so confused by the complexity of this case that they could not rationally come to a decision." "The standard of review for denial of a motion for a mistrial is abuse of discretion." *Smith v. State*, 158 So. 3d 1182, 1185 (¶9) (Miss. Ct. App. 2015).

¶62. The amount awarded by the jury, $176,352.24, is three times $58,784.08, which is the

17

same amount as the original "equal payment" verdict and three-quarters of the total $235,136.32. Thus, the jury's final verdict of $176,352.24 was consistent with the original verdict, which provided "damages at $235,136.32 ÷ 4 = 58,784.08 equal payment." Accordingly, despite the alleged "confusion," the jury was able to "rationally come to a decision."

¶63. Pursuant to Rule 3.12 of the Uniform Rules of Circuit and County Court Practice, the circuit court may declare a mistrial if "there occurs during the trial, . . . misconduct by the party, the party's attorney, or someone acting at the behest of the party or the party's attorney, resulting in substantial and irreparable prejudice to the movant's case." Additionally, under Rule 3.12, the circuit court may grant a mistrial if: "(1) [t]he trial cannot proceed in conformity with law; or (2) [i]t appears there is no reasonable probability of the jury's agreement upon a verdict."

¶64. Here, there is no evidence of misconduct by a party, a party's attorney, or someone at the behest of the party or party's attorney during trial which resulted in substantial and irreparable prejudice to Latham. Moreover, there is no evidence that the trial was unable to proceed in conformity with the law and, as the record shows, the jury was able to agree upon a verdict. Thus, Latham failed to provide evidence that a mistrial was warranted.

¶65. As no grounds existed for a mistrial, we do not find the circuit court abused its discretion in denying Latham's motion.

### I. Motion for a JNOV

¶66. At the conclusion of Johnson, Robinson, and Trahan's case-in-chief, Latham moved

for a directed verdict.  Latham argued: (1) Johnson, Robinson, and Trahan failed to provide sufficient evidence of fraud, deceit, and misrepresentation, (2) there was insufficient evidence that Johnson, Robinson, and Trahan provided payment toward the purchase of the property, and (3) if a partnership was formed, it was an illegal contract which cannot be enforced under the doctrine of in pari delicto.  The circuit court denied Latham's motion for a directed verdict.  Latham then proceeded with his defense.

¶67.    Latham did not renew his motion for a directed verdict at the conclusion of all the evidence and did not submit a peremptory instruction.  Following the verdict, Latham filed a motion for a JNOV, which the circuit court denied.  Latham now claims the circuit court "should have directed a verdict [in his favor]."

¶68.    Our standard of review for a denial of a JNOV and a directed verdict are the same. *Munford, Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992).  Under this standard, we will:

> consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence.  If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render.  On the other hand[,] if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment may have reached different conclusions, affirmance is required.

*Id.* at 1284.

¶69.    A motion for a directed verdict made at the end of the plaintiff's case-in-chief, a renewed motion for a directed verdict at the end of all evidence, a request for a peremptory instruction, and a motion for a JNOV are all procedural vehicles for challenging the sufficiency of the evidence.  *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987)

19

(distinguished on other grounds by *Bush v. State*, 895 So. 3d 836 (Miss. 2005)). "Since each [motion] requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the [circuit] court." *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993).

¶70. Here, Latham last challenged the sufficiency of the evidence in his motion for a JNOV. However, in his motion, Latham did not assert that there was insufficient evidence to support the verdict, nor did he reassert his claims regarding fraud and nonpayment toward the purchase of the property. Instead, the only ground Latham asserted in his motion for a JNOV was the doctrine of in pari delicto. We find Latham's claim of in pari delicto is waived.

¶71. The phrase "in pari delicto" is Latin for "in equal fault." The doctrine of in pari delicto refers to "[t]he principle that a plaintiff who has participated in a wrongdoing may not recover damages resulting from the wrongdoing." *Black's Law Dictionary* 911 (10th ed. 2014).

¶72. In pari delicto constitutes an affirmative defense. *See Hertz Commercial Leasing Div. v. Morrison*, 567 So. 2d 832, 835-36 (Miss. 1990) (A matter is an affirmative defense "if it assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins. . . . It is the sort of defense which says to the plaintiff, 'Assuming everything you have alleged and proved is true, I have a defense which substantially avoids your claim.'"); *see also Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008) ("We agree that in pari delicto is an affirmative defense . . . ."). Mississippi Rule of Civil Procedure 8(c) requires a party

to assert in his answer "any . . . matter constituting an avoidance or affirmative defense."

¶73.    "A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." *Rogers*, 521 F.3d at 385 (internal quotation marks omitted). "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Kimball Glassco Residential Ctr., Inc. v. Shanks*, 64 So. 3d 941, 945 (¶12) (Miss. 2011).

¶74.    Here, Latham failed to assert an affirmative defense of in pari delicto in his answer. Additionally, Latham actively participated in litigation without timely raising the defense or pursuing its enforcement. Indeed, Latham waited until trial to assert the defense of in pari delicto.

¶75.    Because Latham failed to assert an affirmative defense of in pari delicto in his answer and actively participated in litigation without asserting the defense within a reasonable time, we find the defense is waived. Notwithstanding the waiver, Latham's reliance on the doctrine of in pari delicto fails.

¶76.    Latham contends "[Johnson, Robinson, and Trahan] aided and assisted [Trahan and Johnson] in wrongdoing—hiding their assets from the IRS and a wife, respectively." Latham argues the "three cannot now be rewarded for their wrongdoing according to law." We disagree and find the evidence does not support Latham's claim.

¶77.    At trial, Trahan testified that at the time of the purchase in November 2007, there was

21

an IRS lien for unpaid taxes his ex-wife owed on property they owned in New Orleans. Because of the lien, Trahan did not believe he could get a loan to purchase the property. As a result, when Latham offered to finance the purchase in his name, Trahan agreed. Trahan testified that he disclosed his interest in the property to the IRS and that the lien-issue was subsequently resolved. Trahan denied Latham's claim that he was "seeking to fraudulently avoid the IRS tax lien."

¶78. Additionally, Johnson testified he did not want to put his name on the deed since he was having marital issues and "didn't want to tie [the] partnership up in a divorce proceeding." On cross-examination, Johnson testified that he "guessed" he was "trying to defraud" his wife by not putting the property in his name. However, such testimony does not prove that Johnson did in fact defraud his wife.

¶79. The doctrine of in pari delicto only applies where the plaintiff is equally or more culpable than the defendant or acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction. 27A *Am. Jur. 2d, Equity* § 103, p. 641 (2008). The doctrine does not apply where an illegal act or fraudulent intention is not consummated. *McClellan v. McCauley*, 130 So. 145, 148-49 (Miss. 1930).

¶80. Here, there is no evidence that the alleged illegal act or fraudulent intention was consummated. Importantly, Latham does not allege or show that Trahan or Johnson actually committed fraud. Instead, Latham simply claims that Trahan and Johnson were "seeking," "attempting," or "trying" to defraud the IRS and a spouse. However, a bad motive or wrongful intent is insufficient to show in pari delicto. *Id*.

¶81. Moreover, the evidence did not establish at trial that the parties were in pari delicto. Even assuming a genuine issue of material fact existed on this issue, Latham failed to raise or assert it in a timely manner. Accordingly, Latham's claim of in pari delicto fails, and the circuit court did not err in denying the motion for a JNOV.

### J. Motion for a New Trial

¶82. Latham last argues the circuit court erroneously denied his motion for a new trial. Motions for a new trial have been granted only "in rare cases when there would be injustice either in allowing the verdict to stand or in granting a [JNOV]." *Stockett v. Classic Manor Builders, Inc.*, 226 So. 3d 620, 625 (¶20) (Miss. Ct. App. 2017). "Justice requires the granting of a new trial when the verdict is against the overwhelming weight of the evidence." *Id*. "[W]e review the [circuit] court's denial of a motion for a new trial under an abuse of discretion standard." *Id*. "As such, we give substantial weight, deference, and respect to the decision of the [circuit] judge." *Id*. (internal quotation marks omitted).

¶83. In his motion, Latham argued the jury was "confused" and did not evaluate the damages evidence, but "rather intended to grant [Johnson, Robinson, and Trahan] a verdict for whatever they wanted regardless of the proof." We disagree.

¶84. The record shows the jury heard from all of the parties and was faced with conflicting testimony. "[W]hen the evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." *Bass v. Bobo*, 980 So. 2d 944, 950 (¶15) (Miss. Ct. App. 2007).

¶85. Having considered the evidence presented, we do not find the verdict to be contrary

to the overwhelming weight of the evidence that to allow it to stand would result in an unconscionable injustice. Accordingly, we find no abuse of discretion in the circuit court's denial of Latham's motion for a new trial.

## II. Cross-Appeal by Johnson, Robinson, and Trahan

¶86. Following trial, Johnson, Robinson, and Trahan filed a motion for attorney fees, prejudgment interest, and postjudgment interest. The circuit court granted their request for postjudgment interest, but denied their motion for attorney fees and prejudgment interest. On cross-appeal, Johnson, Robinson, and Trahan argue the circuit court's denial of their motion for prejudgment interest was "clearly erroneous and an abuse of discretion."[3] However, before we discuss the issue of prejudgment interest, we must first address Latham's claim that Johnson, Robinson, and Trahan's request for prejudgment interest is barred.

¶87. The record shows that the jury returned a verdict for Johnson, Robinson, and Trahan on December 19, 2014. A judgment was subsequently signed on December 31, 2014, and filed on January 15, 2015. The judgment reflected the jury's verdict and specifically referenced Johnson, Robinson, and Trahan's pending claim for prejudgment interest. The circuit court set a deadline for Johnson, Robinson, and Trahan to serve their motion for prejudgment interest and later extended that deadline to January 28, 2015. The motion was served on January 28, 2015, as required, and filed on January 29, 2015. Latham subsequently

---

[3] Johnson, Robinson, and Trahan did not appeal the circuit court's denial of their motion for attorney fees, and Latham did not appeal the circuit court's award of postjudgment interest.

24

filed a response. On March 17, 2016, the circuit court denied the request for prejudgment interest.[4] Thereafter, on April 18, 2016, a final judgment was filed adjudicating all claims.

¶88. Latham asserts Johnson, Robinson, and Trahan's motion for prejudgment interest was a motion to alter or amend a judgment under Mississippi Rule of Civil Procedure 59(e). Pursuant to Rule 59(e), a motion to alter or amend a judgment must be filed "not later than ten days after entry of the judgment." Latham claims that because the motion for prejudgment interest was not filed within ten days of the January 15, 2015 judgment, it was untimely. Thus, Latham argues Johnson, Robinson, and Trahan's claim for prejudgment interest is time-barred. We disagree.

¶89. Johnson, Robinson, and Trahan's motion for prejudgment interest was not a motion to alter or amend a judgment pursuant to Rule 59(e). The motion did not seek to alter or amend the January 15, 2015 judgment or to relitigate an issue. Instead, the motion simply sought the imposition of prejudgment interest.

¶90. Additionally, despite Latham's assertion, the January 15, 2015 judgment was not a final judgment. "A final, appealable, judgment is one that adjudicates the merits of the controversy which settles all issues as to all parties and requires no further action by the lower court." *Walters v. Walters*, 956 So. 2d 1050, 1053 (¶8) (Miss. Ct. App. 2007) (internal quotation marks omitted). The January 15, 2015 judgment did not settle all issues but, instead, specifically reserved numerous issues, including prejudgment interest. A final judgment was not entered until April 2016. Accordingly, Johnson, Robinson, and Trahan's

---

[4] There is no explanation for the delay in the record.

25

motion for prejudgment interest was timely raised in the circuit court, and their cross-appeal regarding the denial of that motion is properly before this Court.

¶91. "[A]n award of prejudgment interest is reviewed for abuse of discretion." *In re Estate of Smith*, 69 So. 3d 1, 4 (¶10) (Miss. 2011). "Prejudgment interest may be allowed in cases in which the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith." *Id.* at (¶12); *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1117 (¶43) (Miss. 2007); *Stockstill v. Gammill*, 943 So.2d 35, 50 (Miss. 2006). The circuit court found that Johnson, Robinson, and Trahan's damages were unliquidated since "they were not set forth in the alleged partnership agreement itself and were established by a jury without a fixed formula." Additionally, the circuit court found "there was a legitimate dispute as to the parties' responsibility for liability as well as the amount of damages." We respectfully disagree.

¶92. In *Moeller v. American Guarantee & Liability Insurance Co.*, 812 So. 2d 953, 959-60 (¶18) (Miss. 2002), the court held:

> Damages being "liquidated" refers to damages that are set or determined by a contract when a breach occurs. *Black's Law Dictionary* 395 (7th ed.1999). "Unliquidated" damages are "[d]amages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Id.* at 397.

"In determining whether a claim is liquidated, interest has been denied where there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefore." *Cain v. Cain*, 967 So. 2d 654, 663-64 (¶21) (Miss. Ct. App. 2007) (internal quotation marks omitted). However, "[i]nterest may be awarded when the amount of

26

damages is certain, even if the fact of liability for those damages is disputed." *Id*. at 664 (¶23).

¶93.    In their complaint, Johnson, Robinson, and Trahan alleged that each of the partners "has an account and interest in the [p]artnership equal to the money he contributed to the [p]artnership and his share of the [p]artnership profits, less any money distributed to him by the [p]artnership and his share of the [p]artnership losses."[5]  The complaint further alleged that Latham received at closing "no less than $235,000, all of which constituted [p]artnership property and, ultimately, the partnership's profit."  Accordingly, in their prayer for relief, Johnson, Robinson, and Trahan requested that Latham "be ordered to pay . . . compensatory damages in an amount equal to all [p]artnership profit, plus interest as provided by law."

¶94.    The verdict represents the requested relief – Johnson, Robinson, and Trahan's three-quarters share of the partnership profit.  Johnson, Robinson, and Trahan's damages were determined by the partnership agreement when the breach occurred and were not left to the jury's discretion.  The jury was not free to award damages in an amount it determined was appropriate.  Instead, the jury was limited to "damages in an amount equal to all partnership profit."

¶95.    Additionally, the record shows no bona fide dispute regarding the amount of damages. Although Latham disputed liability for the damages, interest may still be awarded.  *See id.*

¶96.    The jury's verdict of $176,352.24, was for Johnson, Robinson, and Trahan's share of the $235,136.42 partnership profit.  The evidence established that the property was sold (on

---

[5] Additionally, at trial, Latham agreed that the "idea [of the partnership] was that all of the partners would contribute equally, both money and time and effort."

March 11, 2010) for $368,420.00. At closing, $133,283.68 of the sale proceeds was paid to the Land Bank to satisfy the loan. The jury then determined that the remaining $235,136.42 was the partnership profit, divided this amount by four (for Latham, Johnson, Robinson, and Trahan), and entered a verdict in the total amount of $176,352.24. This amount of damages was set when Latham sold the property and failed to distribute Johnson, Robinson, and Trahan their share of these profits.

¶97. By using the term "liquidated damages," the dissent confuses the criteria that damages be fixed or "liquidated" to award prejudgment interest with the legal concept of "liquidated damages" in a contractual setting. The dissent says, "We have even been willing to look beyond these provisions and search for the parties' intent within a contract to determine *liquidated damages*." (Emphasis added). To support this statement, the dissent cites *Moeller*, 812 So. 2d at 959 (¶18). *Moeller*, which was quoted above, does not refer to "liquidated damages." Instead, *Moeller* clearly holds that "[d]amages being 'liquidated' refers to damages that are set or determined by a contract when a breach occurs." *Id.*

¶98. The dissent also cites *Massman Construction Co. v. City Council of Greenville, Mississippi*, 147 F.2d 925 (5th Cir. 1945), for the statement "[b]ut ultimately, the term *liquidated damages* has been recognized to be a 'genuine covenanted pre-estimate of damages.' *Shields v. Early*, 132 Miss. 282, 95 So. 839, 841 (1923)." (Emphasis added). Neither *Massman Const. Co.* nor *Shields* support this statement of law. The court in *Massman Const. Co.* considered the proper award of "liquidated damages," as a separate

28

category of damages," based on a contractual provision in a construction contract.[6]  In

*Shields*, the court considered a liquidated damage provision in a real estate contract – "[t]he question is whether the stipulation in this contract for the surrender by the appellee of the cash payment on the purchase price of the land of $250 in case the appellee should breach the contract provides for a penalty or liquidated damages." *Shields*, 95 So. at 840.  The issue of prejudgment interest was not discussed by the court in *Massman Const. Co.* or *Shields*.

¶99.	Here, since Johnson, Robinson, and Trahan's damages were determined by the partnership agreement when the breached occurred and no bona fide dispute exists as to the amount, we find Johnson, Robinson, and Trahan's damages are liquidated.  As a result, they are entitled to prejudgment interest.  Accordingly, the circuit court erred in denying the motion for prejudgment interest.

CONCLUSION

¶100.	We affirm the circuit court's judgment on all issues raised in Latham's direct appeal. However, because we find the circuit court abused its discretion in denying Johnson, Robinson, and Trahan's motion, we reverse and remand for a determination of prejudgment

---

[6] In *Massman Const. Co.*, the court described the case as follows:

> Appellant brought suit in equity against the Appellee for the recovery of the sum of $21,300 which it claimed the Appellee had wrongfully withheld as liquidated damages for the failure of the Appellant to finish the construction of four bridge piers in the Mississippi River within the time limit of 350 days fixed in the contract between Appellant and Appellee.

*Massman Const. Co.*, 147 F.2d at 926.  Then, the court ruled, "[u]nder all the facts and circumstances of this case, the enforcement of the provision in question would be inequitable and unreasonable, and would amount to the infliction of a penalty rather than the allowance of liquidated damages."  *Id.* at 928.

interest.

¶101.   **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND REMANDED.**

   **LEE, C.J., IRVING, P.J., BARNES, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR.  GREENLEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON AND TINDELL, JJ.**

   **GREENLEE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶102.   I concur with the majority's opinion concerning Latham's appeal. However, I disagree with the majority's decision to reverse and remand for a determination of prejudgment interest.

¶103.   Under Mississippi law, the trial court has discretion to award prejudgment interest. *H & W Indus., Inc. v. Occidental Chem. Corp.*, 911 F.2d 1118, 1123 (5th Cir. 1990); *Arcadia Farm P'ship v. Audubon Ins. Co.*, 77 So. 3d 100, 105 (¶19) (Miss. 2012). Appellate courts, therefore, have long held that the trial court's decision is reviewed under an abuse-of-discretion standard. *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1108 (¶15) (Miss. 2007); *Sledge v. Obenchain*, 59 Miss. 616, 618-19 (1882).

¶104.   We must affirm the trial court's decision, unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon weighing relevant factors. *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (¶11) (Miss. 1999) (citing *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990)). This standard indicates that at least two different actions taken by the trial court will not result in reversal. *Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara*, 908 So. 2d 716, 727 (¶25) (Miss. 2005) (citing *Shields v. Easterling*, 676 So. 2d 293, 298 (Miss. 1996)). In the

present case, this means that either allowing or not allowing prejudgment interest would be within the trial court's discretion. The majority, however, holds that the trial court could only have reached one conclusion: to award prejudgment interest.

¶105. After applying applicable Mississippi law and weighing relevant factors, the trial court determined that prejudgment interest was not appropriate. The trial court concluded that damages were not liquidated, and that there were genuine disputes "as to the parties' responsibility for liability as well as the amount of damages." This reasoning aligns perfectly with Mississippi law. *E.g.*, *Upchurch*, 964 So. 2d at 1117 (¶43) ("Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith.") (citing *Stockstill v. Gammill*, 943 So. 2d 35, 50 (¶31) (Miss. 2006)).

¶106. The majority correctly notes that "damages being 'liquidated' refers to damages that are set or determined by a contract when a breach occurs." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 812 So. 2d 953, 959 (¶18) (Miss. 2002) (citing *Black's Law Dictionary* (7th ed. 1999)). But the majority then finds that an oral-partnership agreement between the parties predetermined damages. The majority apparently finds that when the breach occurred, the damages became liquidated.

¶107. The majority continues to discuss the term "liquidated" in reference to damages, asserting that there are two different legal concepts: (1) liquidated damages; and (2) damages that are liquidated. In my view, this assertion leads to an unnecessary expansion of the traditional law concerning liquidated damages. "Liquidated damages" is a term of art derived

31

from the common law of contracts. And, when a term of art "is obviously transplanted from another legal source . . . it brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). Our courts historically recognize contractually-provided liquidated damages. *E.g.*, *Maxey v. Glindmeyer*, 379 So. 2d 297, 300 (Miss. 1980); *Wood Naval Stores Export Ass'n v. Latimer*, 220 Miss. 652, 665, 71 So. 2d 425, 430 (1954). We have even been willing to look beyond these provisions and search for the parties' intent within a contract to determine liquidated damages. *Massman Const. Co. v. City Council of Greenville, Miss.*, 147 F.2d 925, 926 (5th Cir. 1945); *Moeller*, 812 So. 2d at 959 (¶18). But ultimately, the term liquidated damages has been recognized to be a "genuine covenanted pre-estimate of damages." *Shields v. Early*, 132 Miss. 282, 95 So. 839, 841 (1923).

¶108. I therefore must disagree with the majority. The circuit court properly noted that "[liquidated damages] were not set forth in the alleged partnership agreement itself . . . ." And because there is neither a liquidated damages provision nor a contract with which to provide context, this common-law legal term of art should not be made applicable to the facts of this case.

¶109. Courts may also award prejudgment interest in cases in which there is a frivolous or bad faith denial of a claim. *Moeller*, 812 So. 2d at 963 (¶31). The majority states that there was "no bona fide dispute regarding the amount of damages." However, in its opinion, the circuit court identifies three genuine disputes: "(1) the existence of a partnership agreement; (2) whether Latham breached the alleged partnership agreement; and (3) the amount of

damages." The circuit court also found that the denial of the claim was not made in bad faith.

¶110. When there are no liquidated damages and there was no bad faith denial of a claim, then courts consider a trial court's decision on prejudgment interest to be discretionary. *Upchurch*, 964 So. 2d at 1108 (¶15).[7] Therefore, I am inclined to conclude that the trial court was guided by sound legal principles in denying prejudgment interest. Accordingly, I cannot agree with the majority's conclusion that the trial court was obligated to award prejudgment interest. I would, therefore, affirm the judgment of the trial court in toto.

**CARLTON AND TINDELL, JJ., JOIN THIS OPINION.**

---

[7] In *Upchurch*, the trial court's decision on prejudgment interest was based on Mississippi Code Annotated section 75-17-7 (Rev. 2000), which continues to state, "[a]ll other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint."